J. A. HANNER, Adm'r, v. C. N. McADOO.

*Reference and Referee—Facts found not reviewable.*

1, Under a consent reference, with full power in the referee to hear and determine the case upon the law and facts, where there is evidence, as here, bearing upon the subject of the controversy, this court will not pass upon its sufficiency.

2. *Held further*, that the referee did not exceed the limits of the order of reference by finding that there had been a " settlement" between the parties, and that a certain draft, for the recovery of which the action is brought, was taken " into the account"—that mat.er being distinctly put in issue by the pleadings.

CIVIL ACTION tried at Fall Term, 1881, of GUILFORD Superior Court, before *Gudger, J.*

The defendant appealed.

*Messrs. Dillard & Morehead,* for plaintiff.
*Messrs. Scott & Caldwell,* for defendant.

SMITH, C. J.   The plaintiff's demand, on behalf of the estate of his intestate for money received upon a draft deposited with the defendant for collection, being met with several counter-claims preferred, an order was entered at spring term, 1878, by consent of parties, referring the action to George H. Gregory, " with full power under the law as referee to hear and determine the case upon the law and facts, and report to the next term."   The referee accordingly proceeded to take and pass upon the evidence adduced, and made his report wherein he finds upon a statement of the account a balance of $176.16 due from the intestate to the defendant.   The only exception taken by the defendant and presented in his appeal is, to the sum of $176.16 charged against the defendant and represented in the intestate's note of $100 to the defendant executed June 27th, 1868, for the assigned reason that the " charge and finding of fact on which it is based is against the evidence."   In the argument before the judge in the superior court, the terms of the objection were expanded, and it was insisted that there was no evidence, or if any, it was insufficient to justify the referee in making the charge.

The force and effect of proofs offered to establish a fact rest exclusively with the court below, and the determina-

tion then made is not open to re-examination here. If the finding is without evidence, it is an error in law which can be revised and corrected. But in our opinion there is no just ground of complaint against the ruling of His Honor in sustaining the conclusions of the referee in this respect, as a brief reference to the testimony heard by him will show.

Frank Erwin, a witness introduced by the defendant, testified that while he knew nothing of the $382 note executed by the two Moffits and the intestate to the defendant (exhibit 1) he heard the intestate at Moffitt's house urge Moffitt to make some arrangement about a debt they owed the defendant; that the next day the parties were at Greensboro in the defendant's store, and in their conversation the intestate pressed Moffitt to relieve him of the debt; and that the intestate afterwards got from the shop of one Causey a carriage known as the Moffitt carriage. This occurred, the witness states, in June, 1867 or 1868, and he subsequently fixes the latter year as the date from his recollection that, in May, Moffitt came to his camp, and the intestate complained of Moffitt's neglect to pay the debt they were bound on to McAdoo, the defendant. The note to which the exception relates was executed eight days after the other, and recites upon its face that it "is for a carriage from W. D. Moffitt." This testimony indicates (we do not undertake to decide upon its sufficiency) that the value of the carriage, and for which the intestate's note was given, was appropriated by Moffitt in reducing his said indebtedness and exonerating the intestate from his liability *pro tanto*, and as such, accepted by the defendant and sold to the intestate. The fact is thus found by the referee and sustained by His Honor; and, there being evidence, we are precluded from inquiring whether it ought or ought not to have conducted the referee to the conclusions arrived at.

There is no error, and the judgment must be affirmed.

No error.                                          Affirmed.

In same case on plaintiff's appeal:

SMITH, C. J. In this appeal, having already considered that of the defendant in the came cause, we are required to review exceptions of the plaintiff taken to the rulings of the court below upon the referee's report. The plaintiff files three exceptions which are in substance as follows :

1. For that the referee has gone outside of the limits of the reference which is confined to the issues raised by the pleadings, and undertakes to find a settlement between the parties and extinguishment therein of the claim now in in suit.

2. For that he should have charged the defendant with the amount of the draft, the receipt of which. is admitted in the answer, subject to the claim for bacon, but undiminished by that claim as it is barred by the statute of limitations.

3. For that the settlement is found without or upon insufficient evidence.

I. The first exception rests upon a misconception of the character of the action as developed in the complaint, and of the defence set up in the answer. It is not for the rendering an account of a continuous agency, in the nature of a bill in equity under our former practice, but to enforce the payment of money received upon a draft placed in the defendant's hands for collection under his contract to account therefor. It would have been, under a divided system of legal procedure, an action of assumpsit, or a demand for money had and received for the plaintiff's use.

The charge is briefly that the draft is deposited with the defendant for collection and his receipt therefor taken, stipulating, if it was paid, to account for the money to the plaintiff's intestate on settlement, and that the defendant has made the collection and fails to account therefor or to pay over the proceeds.

The answer, admiting the possession of the draft, as alleged, and the receipt of the money due on it, asserts that the money has been accounted for and paid over, and that he is not indebted to the intestate in the said sum of $425.75, as averred in the complaint, or in any amount whatever.

The defendant's liability for the claim is thus distinctly put in issue, and indeed lies at the very foundation of the action. The reference is made by consent of parties, and confers upon the referee " full powers under the law, as referee, to hear and determine the case upon the law and facts, and report."

The referee accordingly upon the testimony finds as a fact " that there had been an *accounting together and settlement of all unliquidated balances*, growing out of the mutual dealings between the plaintiff's intestate and the defendant, in the fall or early winter of 1868, and that the *value of the draft* for the recovery of which the action is brought, to wit, $425.75 *was taken into account and adjusted by and between the parties.*"

This is in direct response to the issue of payment and discharge, and an essential element in the controversy, clearly within the compass of the order and necessary to an adjudication of the cause.

II. The second exception is disposed of in what has already been said.

III. The sufficiency of the evidence to sustain the fact found by the referee and also by the court, that a settlement embracing the claim had taken place, is not a question for us to determine. If there be any evidence, or *reasonable evidence,* as it is sometimes expressed, to warrant the finding, it is conclusive of the fact and beyond revision on appeal to this court. The only inquiry then is, whether there be any evidence on which the referee was authorized to act. He bases his conclusion mainly upon the testimony of two

witnesses examined, whose evidence pertinent to this point is in substance as follows:

Frank Erwin relates a conversation with the intestate in 1868, after he had come into possession of the draft drawn by Noah Gibson on the New York house, in which the intestate said, "he was going to let Mr. McAdoo have it and thought he could pay him with it," and witness knew intestate was then in debt to the defendant.

Charles Hunter testified that he heard the intestate say he owed the defendant some $700, and if he would take up the draft, (that described by the other witness) he could pay witness what he owed for a horse, and that the intestate afterwards told him "he had let McAdoo have the draft and he had about paid him up."

The receipt itself as set out in the complaint undertakes in its concluding clause that the money when collected should be accounted for on a settlement, that is, should be applied as a payment upon his indebtedness, and thus harmonises with the declarations of the intestate as to the disposition he intended to make and did make of the draft. This evidence certainly tends to support the referee's finding, that the proceeds of the draft have been accounted for and applied to the intestate's benefit, and thus the defendant's liability has been discharged. Of its sufficiency to establish the fact the referee and His Honor in reviewing, are the sole judges, and not this appellate court.

We therefore concur with the court in overruling the appellant's exceptions in this appeal also, and affirm the judgment.

No error.                                        Affirmed.