SARAH A. USRY v. M. H. SUIT and others.

*Reference—Judgment— Variance—Pleading, defect of parties— Jurisdiction, sum demanded— Guardian and ward—Negotiable Paper—Statute of Limitations.*

1. The facts found in a reference are conclusive, unless it should appear they were found without evidence or upon improper evidence.

2. As it nowhere appears in the record that the plaintiff, in her representative capacity as administratrix, was made a party, it was proper in the court below to refuse judgment affecting her as such.

3. No variance between allegation and proof is material unless it actually misleads the adverse party; *Hence* where plaintiff sues upon a bond, which by virtue of previous transactions was in the hands of one of the defendants, alleging the amount thereof to be $550 or thereabouts," dated January 8th, 1860; and the bond produced in evidence by the defendant was for $549, dated January 8th, 1860; *Held,* no variance.

4. An objection for defect of parties must be raised by proper pleading. THE CODE, § 242.

5. Where the sum demanded in good faith exceeds $200, the superior court has jurisdiction.

6. A bond made payable to a guardian is in equity the property of the ward, and suit may be brought upon it by the ward when the same was turned over in the guardian-settlement, notwithstanding the legal title may have been transferred by the guardian's endorsement to another.

7. Although, as to the endorsee in such case, the three year statute may bar his right of action on the bond, yet that lapse of time does not affect the right of action of the ward (to whom the bond belonged from the moment of its execution) which in this case accrued prior to August, 1868, and is governed by the statutes in force before that date.

8. In such case the right of action was not conferred by section 55 of the Code of Civil Procedure, but that statute simply enlarged the ward's remedy for enforcing a right of action already accrued at law as well as in equity.

(*Barrett* v. *Henry*, 85 N. C., 321; *Hanner* v. *McAdoo*, 86 N. C., 370; *White* v. *Utley*, *Ib.*, 415; *Young* v. *Rollins*, 90 N. C., 125; *Worthy* v. *Shields*, *Ib.*, 192; *Gorman* v. *Bellamy*, 82 N. C., 496; *Brown* v. *Morris*, 83 N. C., 251; *Brickell* v. *Bell*, 84 N. C., 82; *Wiseman* v. *Witherow*, 90 N. C., 140, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1883, of GRANVILLE Superior Court, before *MacRae, J.*

Defendants appealed.

*Messrs. Batchelor & Devereux*, for plaintiff.
*Mr. M. V. Lanier*, for defendants.

MERRIMON, J.—The material facts of this case are these: The plaintiff, whose maiden name was Suit, became of the age of twenty-one years on the 30th day of May, 1860. She intermarried with Samuel Usry on the 14th day of December, 1870, and he died intestate in the year 1874, and thereafter the plaintiff became his administratrix. Her brother, Robert S. Suit, became of the age of twenty-one years on the 7th day of April, 1863; and his sister Lucina C. Bennett, became of the age of twenty-one years on the 30th

day of September, 1865, having intermarried with Charles W. Bennett on the 18th day of January, 1865.

In May of the year 1865, James R. Suit became the guardian of the persons above named (except the said Charles), then infants under the age of twenty-one years, and as such guardian, received for his said wards considerable sums of money and bonds for money.

On the 8th day of January, 1860, the defendants, M. H. Suit and E. F. Suit, executed to the said guardian for his said wards, their single bond for $549.00, due one day from date; and on the 29th day of November, 1863, Robert S. Suit, having attained the age of twenty-one years, received from his guardian $345.30, and this sum was on that day credited on said bond, the same having been paid by M. H. Suit, one of the obligors therein.

On the 22d day of April, 1867, the said guardian had a settlement with his said wards, in which he turned over to them jointly the bonds and funds that he held for them, and took from them a joint receipt; and among the bonds so turned over, was the said bond for $549.00, with the credit mentioned, entered thereon, and this bond was their common property and so held by them; it went first into the hands of the said C. W. Bennett, husband of Lucina, named above, to whom it has been endorsed by the guardian; then into the hands of the plaintiff, and afterwards into the hands of the said Robert S. Suit, for himself, the plaintiff, and the said Lucina C. Bennett.

At the time of the settlement made between the said guardian and his said wards, the defendants, M. H. Suit and E. F. Suit, were present and subscribed the receipt mentioned as witnesses thereto. At the time of this settlement the interest of the plaintiff in the bond mentioned, it now appears, was $124.43.

Some time after that settlement, without the knowledge or consent of the plaintiff, the said Robert S. Suit and

Lucina C. Bennett, for some consideration moving them thereto, delivered and surrendered to the defendant M. H. Suit, one of the obligors therein, the said bond, and it has ever since been in his possession and by him defaced or mutilated; and the interest of the plaintiff therein has never been paid or discharged. At the time and before the said bond was so surrendered, the defendants, M. H. Suit and E. F. Suit, had notice and knowledge of the plaintiff's interest in it, and of how and for what purpose the said Robert S. held it.

The plaintiff brought this action on the 9th day of October, 1878, upon the bond mentioned, to recover so much thereof as was due to her, as indicated above. It seems that she was not accurately informed as to the exact sum of money mentioned in it, or as to the immediate consideration for which it was given.

In the complaint she described the bond sued upon thus: "That in addition to other moneys which came into the hands of said guardian, (meaning the guardian above mentioned,) was a bond executed jointly by the said M. H. Suit and E. F. Suit, conditioned for the payment of five hundred and fifty dollars ($550.00), or *thereabouts*, part of the unpaid purchase money of said Sweny land, which said bond bears date of the 8th of January, 1860, with interest from date at the rate of six per cent. per annum."

It appears that the circumstances under which the bond was given and leading to its execution, were not accurately detailed in the complaint, but mediately it was given for part of the purchase money of " the Sweny land."

The defendants, in their answer, deny that they executed such bond as that alleged in the complaint, or gave any such bond to the said guardian, and explain, at great and unnecessary length, how they came to give the bond mentioned; they plead the statute of limitation, and they insist

in their answer that the administrator of the deceased husband of the plaintiff is a necessary party to the action.

At spring term of 1881, the court made an order in these words: "By consent of parties, ordered that this action be referred to John W. Hays, as referee, under the Code of Civil Procedure."

At spring term of 1883, the referee made his report, finding the facts and law arising thereon, and likewise filing therewith the evidence taken by him. The defendants filed numerous exceptions to the report.

At the fall term of 1883 of the court, the action came on to be heard upon the report filed and the exceptions thereto. The court overruled all the exceptions, except the twelfth, and gave judgment for the plaintiff. The defendants excepted, and appealed to this court.

The order of reference was entered by consent and is very broad in its terms and effect. The whole action was referred by it, so that the referee had and exercised the powers both of the judge and the jury. He had authority to pass upon all the issues of fact and law. His findings in respect to the facts were conclusive, subject however, to the right of either party, on motion, to move the court to modify, set aside or confirm them. The consent of the parties, entered of record, is a sufficient consent in writing as allowed by THE CODE, § 420. This is an action at law, and this court has no authority to review or disturb the findings of the facts involved. *Barrett* v. *Henry,* 85 N. C., 321; *Hanner* v. *McAdoo,* 86 N. C., 370; *White* v. *Utley, Id.,* 415; *Young* v. *Rollins,* 90 N. C., 125; *Worthy* v. *Shields, Id.,* 192.

If, however, the referee found facts without evidence, or based his findings upon improper evidence, this would be error of law, that might be corrected in the superior court, and upon appeal in this court.

We cannot, therefore, pass upon the defendant's exceptions for alleged improper findings of fact, unless it shall

appear that they were based upon no evidence, or improper evidence.

The exceptions are very numerous, and some of them are vague and indefinite, while others are substantially repetitions of one or more that precedes them in the order of number. It had been better to make them fewer in number, and state them with more care and precision. This would have greatly promoted the convenience of the counsel and court and helped us to reach a just and satisfactory conclusion.

We will endeavor to decide the material questions of law raised by the exceptions without regard to their exact order.

1. The defendants insisted that as the plaintiff was allowed by the referee to be made a party plaintiff as administratrix of her deceased husband, she should be required to give an undertaking for costs, she having been allowed to sue in her own right as a pauper. They likewise insisted that as the referee had found that the deceased husband in his life-time had no interest affected by the action, it should be dismissed as to her as administratrix, and that they should have judgment against her for costs.

The court properly overruled the exceptions in all these respects, because it does not appear from the report of the referee or anywhere in the record, that the administratrix of the deceased husband was made a party. No order for that purpose appears, nor does she as administratrix appear as a party plaintiff at any stage of the action. It is not sufficient that it was contemplated and determined to make the administratrix a party ; she must have been made such, and this must appear of record. The court takes notice and jurisdiction only of parties to the record. And this court can only be governed by what appears with reasonable certainty in the record, whether reference be had to parties, or other material things therein, or that ought to be therein.

It seems that as the defendants suggested in their answer

that the administratrix of the plaintiff's deceased husband ought to be made a party, the referee may have said she might be made such party, but upon finding, as he did, that the deceased husband in his life-time had no interest affected by this action, his administratrix would not be a proper party, she was not so made. The referee in a memorandum found in the evidence sent up, seems to refer to her as a party, and so does the court in passing upon one or two of the exceptions; but it nowhere appears that she was made a party, except by vague reference. This is not sufficient, and we are not called upon to decide a question not raised by the exceptions.

2. The defendants moved that judgment of non-suit be entered against the plaintiff, because of an alleged material and fatal variance between the bond alleged in the complaint as the ground of the action, and the bond produced and put in evidence by the defendant M. H. Suit, and which was surrendered to and defaced by him, and which was the bond upon which the plaintiff in fact founded her action. And upon the findings of the facts by the referee, the defendants moved in arrest of judgment for the same alleged variance. The court overruled these motions.

The bond sued upon was in the possession of one of the defendants; the plaintiff was not accurately informed as to the exact sum of money mentioned in it, or the precise considerations for which it was given; but under the circumstances, the allegations of the complaint described it as well as the plaintiff could. She alleged a bond for $550, or " thereabouts," meaning about that sum, dated the 8th of January, 1860, with interest from date, and then alleged other facts and circumstances descriptive of and pointing to it; these were not all truly stated, but still they pointed to the bond in the possession of one of the defendants and the bond sued upon. The bond produced upon the trial by the defendant M. H. Suit, was for $549, due one day from

date, and dated the 8th day of January, 1860, so that the variance in fact consisted of one dollar, and this was cured by the description in other respects. The complaint plainly has reference to this bond, and in such way as to make the defendants sensible of the fact, and put them on their defense in respect thereto. Any question as to what interest the plaintiff had in it, does not arise in this connection—only the question of variance is here presented.

The present system of civil procedure looks to the substance of the pleadings and proofs, more than to mere matters of form. If the allegations in the pleadings, and the proofs offered in support of them, substantially harmonize, although they do not in immaterial respects or to an immaterial extent, there is no variance of which the law takes notice ; if the substance of the allegation in its entire scope and meaning is proved, that is sufficient. THE CODE, §§ 269, 270 and 271,-provides in plain and comprehensive terms that, " No variance between the allegation in a pleading and the proof shall be deemed material unless it has actually misled the adverse party, to his prejudice in maintaining his action upon the merits." If it is alleged that a party has been misled, that fact must be proved to the satisfaction of the court, and in what respect he has been misled, and the court may order the pleading to be amended. In case of immaterial variance—that is, a variance that does not substantially prejudice a party, the court may direct the fact to be found according to the evidence, or it may at once order an amendment without cost. The purpose of the statute is to enable the court to promptly reach and determine the merits of the matter in litigation, doing no party injustice, but cutting all parties off from shifts, subterfuges and technical quibbles by which to avoid the justice of the matter and the judgment of the law. *Gorman* v. *Bellamy,* 82 N. C., 496 ; *Brown* v. *Morris,* 83 N. C., 251.

3. It was insisted that it appeared that the referee found that C. W. Bennett and his wife were necessary parties, and therefore, the action could not proceed without them. The referee in fact found that Robert S. Suit and Lucina C. Bennett, his sister, delivered the bond to the defendant M. H. Suit, and the defendants say in their answer that they "got in the said bond," meaning that they discharged it. It appears from the report in effect, if not in terms, that Lucina C. Bennett and her husband parted with their interest in the bond, directly or indirectly, to the defendants for some consideration that does not certainly appear. Besides, the objection was not raised by demurrer or the answer. THE CODE, § 242.

4. The defendant moved that the action be dismissed, because the principal sum found to be due the plaintiff was less than $200, and therefore, the superior court had not jurisdiction. The court denied the motion, and we think, properly. The sum *demanded* was greater than $200, and it did not manifestly appear that the sum due was less than that. It is the sum demanded in good faith that settles the jurisdiction in cases like this. *Brickell* v. *Bell*, 84 N. C., 82; *Wiseman* v. *Witherow*, 90 N. C., 140.

5. The exceptions 1, 6, 7, 8, 14 rest upon the alleged ground that there was no evidence to support the findings of the referee in respect to the matters mentioned therein. The court held that there was evidence upon which the referee might base his findings.

As we have said, we have no authority to reverse and correct the findings of the facts in cases like this, if there was any evidence to support them. The court below held that there was evidence. Upon a careful examination of the pleadings and the evidence sent up with the appeal, we concur with that court. There was plainly evidence arising legitimately in a variety of ways, that the referee might consider; some of it was conflicting, it is true; other portions of it seems to have been slight, but this goes to the weight

and preponderance of the whole ; it was the duty of the referee to determine that, and we have no authority to disturb his findings of the facts, nor are we at liberty to express any opinion in this respect.

6. The bond in question was executed on the 8th day of January, 1860, and due one day from date. A payment was made, and a credit entered thereon, on the 29th day of November, 1863, for $345, and this is admitted by the defendants. On November 6th, 1866, it was endorsed to Charles W. Bennett without recourse, he being the husband of Lucina C., who was sister of the plaintiff and one of the wards of the guardian, James R. Suit, who so endorsed it. This action was begun on the 9th day of October, 1878.

It is manifest, that there was no statutory bar as to the obligee in the bond, nor was there any statutory presumption of payment as to him, because, under the statute the time between the 20th of May, 1861, and the 1st day of January, 1870, must be excluded, and after the latter date, the time can be counted only as if the payment endorsed on the bond had been made on that date, and less than ten years elapsed between that date and the date of the bringing of the action.

But the counsel for the defendants insisted on the argument, that under the statute the bond was a negotiable paper ; that it was endorsed to Charles W. Bennett, and that, as to the endorsee, it was barred by the statute of limitation after three years.

This may be so ordinarily. But this case is peculiar, in that the bond was made payable to James R. Suit, the "guardian for S. A. Suit, R. Suit, L. E. Suit;" it belonged in equity to the wards, no matter in whom the legal title might rest; it was their property, and mere endorsement could not deprive them of it, as their property; they were entitled to every benefit and advantage secured by it; the guardian was their trustee, and when he turned the bond

over to them in his settlement, they might have maintained an action upon it in their own names without regard to the legal title. THE. CODE, § 177. The endorsement upon the bond was not made as to them, to enable them to sue the obligors; this they could do without endorsement, because. the bond belonged to them from its inception.

It is admitted, that the obligee, the guardian, might have maintained an action on the bond—that he would not be barred by the statute of limitation, nor would there arise any presumption of payment as to' him; but it is said that the wards to whom it so belonged, cannot do so because it was endorsed to the husband of one of them.| This is an attenuated refinement, destructive of substantial right, and we cannot accept it as warranted by even a technical view of the statutes making bonds for money negotiable and limiting the time within which actions may be brought. If even the statute could be treated as a bar to the endorsee, under the [circumstances, this would not conclude the plaintiff, the real owner in part of the bond. The bond was in effect made to the wards, and they might maintain the action just as the nominal obligee might do. So that, we think the court properly overruled the exceptions to the report of the referee in respect to the statutes of limitation and presumption.

The learned counsel for the defendants further insisted in his argument, that as the plaintiff did not have the *legal* title to the bond, her right to sue upon it in her own name as the real owner in part of it, was conferred by C. C. P., § 55, (THE CODE, § 177,) and therefore her *right of action in her own name* accrued after the Code of Civil Procedure became operative, and the statute of limitation, C..C. P., §§ 31 and 34, in force in 1870, (repealed afterwards as to negotiable bonds,) barring actions on *negotiable bonds* after three years, applied to the right of action upon the bond sued upon, and barred the same.

We cannot accept this interpretation of the several provisions of the C. C. P. referred to. It would practically defeat in great measure the saving purpose of C. C. P., § 16, (THE CODE, § 136,) which provides that actions commenced and *rights of action* accrued before the 24th day of August, 1868, shall be governed by the statutes in force next before that date. The bond was due in 1860, and her right of action accrued upon it, certainly after the settlement with her guardian on the 22d day of April, 1867. She could not, it is true, then sue *at law*, because the legal title was in another, but she could have had her remedy in equity at that time. Her right of action therefore accrued before the 24th day of August, 1868, and the statute of limitation invoked does not apply. The C. C. P., § 55, (THE CODE, § 177,) did not confer upon her the *right of action;* it only enabled her to enforce a right of action already accrued, *at law*, as well as in equity—it simply enlarged the remedy for enforcing her right of action.

The referee found in effect, that the bond sued upon had been paid and discharged, except as to the interest of the plaintiff therein; that as to her it had not been paid; that the statute of limitation was not a bar, and there was no statutory presumption of payment. If his findings of the facts were correct, (and with this we have nothing to do,) the plaintiff is entitled to recover. The technical rules of the common law method of procedure that required the owner of the legal title in such cases to bring the action, are all swept away by the Code of Civil Procedure. THE CODE, § 177, provides that " every action must be prosecuted in the name of the real party in interest, except as otherwise provided," and this case is not otherwise provided for.

No error.  Affirmed.