JOHN M. HUNTER v. ELI YARBOROUGH.

*Demurrer—Jurisdiction—Parties.*

A, by deed, conveyed slaves to her daughter, I. C. H., for her own use during life, and in the deed proceeds "to constitute and appoint" the said I. C. H., a trustee to hold said negroes during her natural life for all, and singular, "the children of said I. C. H., their heirs and assigns forever." The husband of I. C. H., before 1860 and during the life of his wife, sold said slaves and assisted in their removal beyond the limits of this State. I. C. H. died in 1880, and her husband refusing to account for the fund or any part of it, the plaintiff, one of the children of I. C. H., brought this action against the husband to recover his share of the price for which the slaves were sold. Defendant demurred and assigned as ground of demurrer, that it appears upon the face of the complaint "that the court has no jurisdiction of the subject of the action"; *Held,* that the demurrer was defective in not stating the ground of objection to the complaint; but as this defect was jurisdictional, it could not be waived, and could be taken advantage of at any time —even in this court; (2) that plaintiff had an equitable right to part of the proceeds of the sale of the slaves, and that the Superior Court, and not a justice of the peace, had jurisdiction; (3) all the children of I. C. H. were necessary parties, but this defect can be cured in the Superior Court.

(*Love* v. *Commissioners*, 64 N. C., 706; *Gaskill* v. *Commissioners*, 85 N. C., 278; *Tucker* v. *Baker*, 86 N. C., 1; *Hawkins* v. *Hughes*, 87 N. C., 115; *Gill* v. *Young*, 82 N. C., 273; *McKeil* v. *Cutlar*, 4 Jones Eq., 381; *Isler* v. *Isler*, 88 N. C., 576; *Cheshire* v. *Cheshire*, 2 Ired. Eq., 569; cited and approved.)

CIVIL ACTION, tried at Fall Term, 1884, of the Superior Court of MOORE county, before *Shepherd, J.*

The facts are stated in the opinion of the Court.

From the judgment of the Court overruling the demurrer, the defendant appealed.

*Messrs. W. E. Murchison* and *R. P. Buxton*, for plaintiff.
*Mr. J. W. Hinsdale*, for defendant.

SMITH, C. J. In the month of October, 1854, Priscilla Thomas, being then the owner of two young female slaves, by deed of gift conveyed them to her married daughter, Isabella C. Hunter, for her own use during life, and as trustee to hold the remainder during the period of her own limited possession and enjoyment, for the use and " benefit of all and singular the children of the said Isabella C. Hunter," designating by name, as such, in the deed, Jane Elliott and Martha Adaline. Besides these two, other children, B. W. and John M. Hunter, the plaintiff, were born during the marriage. Upon the death of her husband, the said Isabella C. intermarried with the defendant, Eli Yarborough, by whom she had six other children.

Sometime previous to 1860, and during his wife's life, the defendant disposed of said slaves, and their issue subsequently born, as his own, by selling them to be removed, and in assisting in their removal beyond the limits of the State, receiving in payment therefor $1,750 in money.

Isabella C. died in August, 1880, and the defendant refusing to account for said remainder or any part thereof, the plaintiff assenting to the sale, seeks in this action to charge him with the principal money, and recover his share thereof.

The defendant demurs to the complaint, for that upon its face it appears " that the court has no jurisdiction of the subject of the action."

Upon the hearing of the issue raised by the demurrer, it was overruled and the defendant allowed to answer the complaint, from which judgment the defendant appeals.

The demurrer fails to specify the grounds of objection to the complaint, as it should do, according to the construction put

upon the statute in *Love* v. *Commissioners*, 64 N. C., 706, and in its present form was wholly needless, since the want of jurisdiction cannot be waived and may be taken advantage of at any time, even in this court. *Code*, §§240, 242; *Gaskill* v. *Commissioners*, 85 N. C., 278; *Tucker* v. *Baker*, 86 N. C., 1; *Hawkins* v. *Hughes*, 87 N. C., 115.

But in the argument supporting the demurrer, it is contended the action is founded on an implied contract to keep and pay over the principal fund to those entitled in remainder at the expiration of the precedent particular estate, and as the part claimed by the plaintiff is less than $200, cognizance of the claim resides in the court of a justice of the peace.

This is a misconception of the action as presented in the complaint. Assuming the defendant's obligation to rest upon an implied contract, it is a contract to account for and pay over the entire sum received to those entitled, and not a series of contracts to pay over to each his and her ratable part of it.

This view of the case shows that all the remaindermen, personally or by representation, ought to be parties to the cause, so that one recovery may be effected for all and the defendant not exposed to a succession of separate suits by each.

The demurrer, if taken to the defect of parties plaintiff, would have been effectual; *Code*, §239, ¶4; *Gill* v. *Young*, 82 N. C., 273.

The action, however, rests upon an equity of the persons entitled in remainder to waive the tortious disposition of the slaves and follow and secure the substituted fund resulting from the sale.

In *McKeil* v. *Cutlar*, 4 Jones Eq., 381, Pearson, C. J., uses this language: "We are satisfied that Catharine Cutlar, the defendant's intestate, sold the slave out and out, with the intention that he should be run off and taken to parts unknown, and that she received $500 as the price. Having only a life estate, it was against conscience for her to sell the absolute interest except upon the footing that, as the charge of a criminal offence, which

was made against the slave, rendered it expedient for the remainderman, as well as for herself, to sell him, she would do so, and hold the price for their mutual benefit. This is a *clear equity*, which the plaintiff has a right to enforce against the personal representative of Mrs. Cutlar to the extent of the assets."

After a full discussion of the learning on this subject, and an examination of the adjudged cases not found to be in entire harmony, the result is arrived at and announced as the true doctrine by our late associate, Mr. Justice Ruffin, in *Isler* v. *Isler*, 88 N. C., 576 : "The Court feel at liberty to adopt their own rules with regard to the matter, and to them none seems as simple or just as the one laid down in *McKeil* v. *Cutlar, supra*, which was also recognized in *Cheshire* v. *Cheshire*, 2 Ired. Eq., 569, allowing the price to represent the slave and to be enjoyed by the life-tenant during the residue of his life, and then without abatement to him in remainder; provided he shall elect to ratify the sale and take the fund." These suits were in the court of equity and the fund was pursued and reached in the hands of the life-owner, as a trustee, liable to account for the money as such.

The present case is stronger, for, besides the relations of the owners of the particular towards the owners of the remainder estate, in her deed, the donor proceeds in direct words " to constitute and appoint the said Isabella C. Hunter, a trustee to hold the said negroes during her natural life for all and singular the children of said Isabella C. Hunter, their heirs and assigns forever."

The demurrer was therefore properly overruled, and the necessary parties can be made in the Court below, and the defect already noticed in this respect removed.

Let this be certified for further proceedings in the Superior

No error.                                      Affirmed.