## LONG, Receiver, *v.* BUFORD and others.

*(Circuit Court, W. D. North Carolina.* April Term, 1885.)

REMOVAL OF CAUSE—SEPARATE CONTROVERSY.

> The pleadings and record in this case, as they stood at the time of removal, show that it involves but one indivisible controversy, and the cause is remanded to the state court.

Motion to Remand.

*W. M. Robbins* and *G. N. Folk,* for plaintiff.

*D. Schenck* and *Charles Price, contra.*

DICK, J. In determining the motion of the plaintiff to remand this suit to the state court, I deem it unnecessary, in this opinion, to state the allegations and the matters of defense with the fullness and particularity with which they are set forth in the pleadings. The general merits of the controversy will be considered and decided upon the pleadings and the evidence when the suit is set for hearing.

This is a civil action instituted under the code practice of this state in which legal and equitable rights and interests may be adjusted and administered in our form of action, by applying the appropriate remedies. The relief demanded in the complaint is wholly of an equitable nature, and the case in this court must be considered as a proceeding in equity, as the courts of the United States administer the principles of law and equity by separate and distinct modes of procedure.

The object of a court of common law is to reduce the litigation to separate and distinct issues of law, or issues of fact; and the pleadings must be framed with accuracy and precision so as to produce such results. The object aimed at in a court of equity is to make a complete decree on the general merits, and adjust and determine the rights of all persons legally or beneficially interested in the subject-matter of such decree. The rules of pleading, therefore, in equity are less stringent than at law; and the general scope of a bill may be considered, and such relief afforded as is warranted by the merits disclosed, although not alleged with the technical accuracy and precision required in proceedings at law. As a general rule in equity pleading, the plaintiff must state his case in direct terms and with reasonable certainty. General certainty is usually sufficient. When matters are alleged to be known to the defendant, or must, from the nature of the circumstances, be within his knowledge,—and are the subject of the discovery sought in the bill,—precise allegations thereof are not required. Story, Eq. Pl. 213.

I have briefly referred to these general rules of equity pleading for the purpose of showing the liberal spirit which governs courts of equity in reaching the merits of a case, when they adjust and determine the rights of parties in accordance with the enlightened prin-

ciples of justice and equity. These liberal and flexible rules of plead-
ing are fully recognized and adopted in the system of code practice
which prevails in this state in cases in which equitable rights are in-
volved. *Hoover* v. *Berryhill*, 84 N. C. 132; *Usry* v. *Suit*, 91 N. C.
406.

In this complaint the plaintiff in substance alleges that he is the
duly-appointed receiver of a defunct corporation, chartered as the
Western Division of the Western North Carolina Railroad Company,
and generally known as the Western Division Company, and that he
was empowered to institute this action by the proper legal author-
ity; that in August, 1848, the legislature of North Carolina passed
an act authorizing the organization of the said corporation, which he
now represents, to be vested with the usual powers and rights of other
similar corporations. The said corporation was duly organized, and
under a provision in the charter the state of North Carolina became
a stockholder to a large amount, and issued its bonds in payment of
its stock, and directed taxes to be levied to satisfy the same. The
corporation entered upon the work for which it was organized, and
constructed a road-bed and a large quantity of masonry and other
work, to the amount in value of $300,000. In the progress of said
work the corporation became largely indebted to various individuals
for goods sold and delivered, materials furnished, money loaned, and
work done, to the amount of about $50,000. Said debts have been re-
duced to judgment against said corporation, are still due and unpaid,
and constitute a lien upon the real estate and franchises of said cor-
poration.

The complaint further alleges, in substance, that by reason of an
act of the legislature of this state, passed in March, 1870, the West-
ern Division Company was deprived of the bonds and promised as-
sistance of the state; and having no other means to carry on its
work, it became insolvent by virtue of such unexpected embarrass-
ment; that it had no property to pay its large indebtedness, except
its franchises, road-bed, bridges, masonry, and other parts and fix-
tures of the uncompleted railway, and some interests which it had
acquired in certain Florida railroads.

The complaint further alleges, in substance, that in March, 1879,
the legislature of this state passed an act repealing the charter of
said Western Division Company, and further declaring that the legal
title of all the property and effects of said corporation should, by the
force and effect of said act, be transferred to and vested in the West-
ern North Carolina Railroad Company, a then existing corporation,
to be held, nevertheless, by said last-named company in trust for the
use and benefit of the creditors of the said Western Division Com-
pany. That said expressly declared trust was accepted by the said
Western North Carolina Railroad Company, and it was authorized
by said act to take possession of said trust property and effects, and
for that purpose to prosecute such actions at law and suits in equity

as might be necessary. That after the Western Division Company was thus merged in the Western North Carolina Railroad Company, James W. Wilson, its president, received $25,000 for the interest of the Western Division Company in certain Florida railroads, and applied the same to the purchase of iron, which was used in laying the track of the Western North Carolina railroad, and constitutes a part of the property now in the possession of and used by said company, and is worth the sum of $25,000.

It is further alleged, in substance, in the complaint that some time after the reorganization of the Western North Carolina Railroad Company under the amended charter of March, 1879, the state of North Carolina sold and transferred all of its interests in said railroad to W. I. Best and others, who subsequently assigned and transferred all the interests thus purchased to the defendants A. S. Buford, T. M. Logan, and W. P. Clyde, who took possession of the franchises, property, and effects of every kind belonging to the said Western North Carolina Railroad Company, and procured all the interests of the private stockholders. The complaint then makes the following allegations, which are regarded by counsel as very material in determining this motion to remand:

"That the legislature of North Carolina, on the ——— day of ———, authorized the purchasers of the Western North Carolina Railroad Company to create a new corporation out of the company thus sold, conveyed, and transferred to them by the state; and, in accordance with the provisions of said act of the general assembly of the state of North Carolina, and the purchasers thereof, in accordance with the provisions thereof, organized a new corporation, and known as the Western North Carolina Railroad Company, and *they* have taken possession of all the property, franchises, and effects of every kind belonging to the Western North Carolina Railroad Company, including all the property, franchises, and effects of every kind belonging, or formerly belonging, to the Western Division of the Western North Carolina Railroad Company; and the said A. S. Buford, T. M. Logan, and William P. Clyde, as well as W. I. Best and others, purchasing from the state, took the said property, franchises, and effects of every kind coupled with the trust attached thereto."

The counsel of defendants insists that the personal pronoun *they* (which I have italicized in the above quotation) refers only to Buford, Logan, and Clyde, and does not represent the *new* corporation formed by said purchasers. I do not concur in this construction of this sentence. The word *they* refers to persons who have taken possession of the property mentioned. There are two kinds of persons referred to in the preceding clause of the sentence: Some natural persons, and an artificial person, both capable of taking possession and holding property, and the artificial person is the nearest antecedent. The rule of syntax that personal pronouns agree with the antecedent nouns which they represent in gender, number, and person, does not strictly apply to *they*, as that pronoun has the same form for the several genders, and often refers to two or more antecedents in the singular number. When there are two or more antecedents conjoined

in the structure of a sentence, their representative pronoun must be in the plural number. If the two antecedents in this sentence were separate and distinct corporations the word *they* would certainly apply to both. In the construction of facts stated in pleading, it is a general rule at common law that everything shall be taken most strongly against the party pleading, but the language is to have a reasonable intendment and construction. And where an expression is *capable* of different meanings, that shall be taken which will support the averment, and not the other which would defeat it. 1 Saund. Pl. 416.

We have already observed that courts of equity, in construing the pleadings in a suit, exercise a more liberal discretion than courts at common law, and will regard the whole scope of a bill, and the object sought, in ascertaining the intendment of the plaintiff in the language used in his allegations. In endeavoring to ascertain the intention of the person who drew this complaint, I think I am fully authorized in applying the personal pronoun *they*, in the sentence we are construing, to both antecedent nouns, and not to the second antecedent in exclusion of the first. It is insisted by counsel of plaintiff that the object and purpose of the purchasers, in organizing the *new* corporation, was to place the property and franchises purchased in the possession and under the control of the corporation defendant, to be used to their mutual advantage and profit. The construction, as to the intention of the pleader, which I have placed upon the above allegation is sustained by the twelfth paragraph of the complaint, in which it is distinctly alleged that a demand was made on the defendant Western North Carolina Railroad Company in 1882, to pay over money, and carry out the trust imposed in favor of the creditors of the Western Division Company. The pleadings show that at the commencement of this action there was but one Western North Carolina Railroad Company, the present defendant, exercising the franchises of a corporation.

If I am correct in my construction of the language of the complaint, it appears from the allegations that certain property formerly belonging to the Western Division Company, liable to the claim of creditors, who have docketed judgments, and who are represented in this action by the plaintiff, passed into the hands of the defendants, incumbered with a trust in favor of such creditors, expressly imposed by an act of the legislature of this state; that the legal title to said property was transferred to the defendants Buford, Logan, and Clyde, and was placed by them under the possession and control of the defendant corporation to be used and employed in its ordinary business operations. It does not appear when, or how far, title to said property was transferred to said corporation. These allegations are controverted by the answers of the defendants, and form issues to be decided upon the evidence at the final hearing.

If the allegations of the complaint are averred with sufficient cer-

tainty, and are fully sustained by the proofs, the remedy afforded by the law seems to be clear and complete. The doctrines upon this subject are fully discussed in *National Bank* v. *Insurance Co.* 104 U. S. 54. It is there announced as an undoubted principle of equity "that, as between *cestui que trust* and trustee, and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or its altered state, continues to be subject to or affected by the trust." In this respect there is no distinction between express, implied, or constructive trusts.

I am inclined to the opinion that if the complainant can sustain his allegations by satisfactory evidence at the hearing, the defendants may be declared constructive trustees of the property mentioned in the pleadings. In the case of *Johnson* v. *Prairie*, 91 N. C. 159, the supreme court of this state said: "It is a well-settled rule in this court that where a purchaser, in the necessary deduction of his title, must use a deed which leads to a fact showing an equitable title in another, he will be affected with notice of that fact."

As a general rule of law as to the title and transfer of real property a subsequent purchaser is chargeable with constructive notice when he has information necessarily incident to such matter sufficient to put him on inquiry, and the means of investigation are easily accessible. The law presumes that purchasers of real property will inquire into the right of the vendor to sell, and will examine the source and chain of title.

The principal subject of the argument of counsel on this motion to remand was the manifest confusion and incompleteness of the allegations of the complaint as to the defendant corporation. It appears from the complaint that two corporations, known as the Western North Carolina Railroad Company, were created and organized under acts of the legislature of this state. The first was organized under the act of the fifteenth day of February, 1855, and, under the provisions of the act of the thirteenth day of March, 1879, was invested with all the property and franchises of the Western Division Company to be held in trust for the creditors of said company.

The second corporation was formed by the defendants Buford, Logan, and Clyde, the purchasers of the property and franchises of the first corporation, and this second corporation is now in possession of said property and franchises using the same. The defendants in their answers allege that there was another corporation styled the Western North Carolina Railroad Company, created and organized under an act of the thirteenth of March, 1875, and was really the *second* corporation, and the immediate predecessor of the present defendant corporation.

In the complaint allegations are made against the Western North Carolina Railroad Company in rather a loose and indefinite manner,

and without discriminating clearly the organization referred to by such name. The confused, indefinite, and inartificial allegations are justly subject to the criticisms of the counsel of defendants, but the objections made are not fatal on this motion to remand. The objection to a defective statement of a cause of action ought to have been made by demurrer, so that the plaintiff might have had an opportunity to amend and make his allegations of a good cause of action more precise and definite. The plaintiff may also insist that the answers of the defendants have waived the objections to the sufficiency of the allegations of the complaint, as they have not in their answers reserved the right to make such objections as upon demurrer. It is insisted by the counsel of defendants that "the right of removal, if claimed in the mode prescribed by the statute, depends upon the case disclosed by the pleadings as they stand when the petition for removal is filed." *Barney* v. *Latham*, 103 U. S. 205. We will endeavor to apply this established rule of law to the case now before us.

This case was removed under the second clause of the second section of the act of March 3, 1875. The purpose and meaning of this section have been fully defined by numerous decisions of the federal courts, and the only difficulties that can now be presented for determination will arise from the peculiar facts and circumstances that appear in the pleadings and record of a case. The pleadings and record in this case, as they stood at the time of removal, show that the plaintiff is a citizen of this state; that the defendant petitioners are citizens of other states; and that the corporation defendant is a citizen of this state. The only other question for consideration is whether there are two or more causes of action involved in this suit which can be separated, and whether there is one matter of controversy wholly between the plaintiff and petitioning defendants, which can be fully determined between them without directly affecting the rights and interests of the defendant corporation.

In the complaint the defendant corporation is made a party defendant, and relief is asked against it, and it has been duly served with process, and has filed an answer. It is charged in the complaint as having in possession the property involved in the controversy, and has long been using the same and deriving profits therefrom. It appears to be an indispensable party, as its rights and interests must be seriously involved in any decree made against the other parties defendant. It is a general rule in equity that all persons legally or beneficially interested in a subject-matter of controversy before the court are entitled to be heard, and must be made parties. This general rule has been so modified by statute, and rules of the supreme court in equity, (Rev. St. § 737, rules 22, 47,) as to authorize courts of equity to dispense with proper and even necessary parties to a suit under circumstances mentioned in said statute and rules. But on this motion to remand a case removed to this court from the state

court, under the second clause of the second section of the act of March 3, 1875, the corporation defendant being an actual party before the court, it occupies the position of an indispensable party, as its interests and rights must be settled and bound by any decree that may be made.

The pleadings, in my opinion, disclose but one cause of action. The sole object of the suit is to establish the right of the complainant as receiver to enforce a trust in behalf of creditors, which was expressly imposed upon certain property which he alleges formerly belonged to the Western Division Company, and is now in the hands of and under the control of the defendants. The authority of the plaintiff to institute this suit, the rights claimed, the grievances complained of, the terms of the express trust, the nature and value of the property, the persons who hold the same, and the redress sought, are distinctly alleged in the complaint, and constitute but one definite equity as a ground of relief. In *Hyde* v. *Ruble*, 104 U. S. 407, Chief Justice WAITE, speaking for the court, says: "The issues made by the pleadings do not create separate controversies, but only show the questions which are in dispute between the parties as to their *one* controversy."

The counsel of defendants in their brief present a "second ground" to sustain their right of removal in the following terms:

"That the petitioners, Buford, Logan, and Clyde, *controvert* the allegation that they have the property, effects, and franchises of the Western Division, that being the matter with which they are *specifically* and *solely* charged in the complaint," and "that the Western North Carolina Railroad Company *controverts* the allegation that it or somebody else has the books and evidences of indebtedness of the Western Division." The material matters referred to in the above statements have been considered and commented upon in the preceding part of this opinion. I regard paragraph 8 of the complaint, containing charges made on information and belief, as simply a usual method of pleading intended to procure discovery as to matters incidental to the one main indivisible controversy involved in the suit, and present no separate cause of action. The fact that the defendants, in their joint answer, separately controvert some of the allegations of the complaint does not create separate controversies. *Ayres* v. *Wiswall*, 112 U. S. 187; S. C. 5 Sup. Ct. Rep. 90.

The elaborate briefs and forcible arguments of the counsel of the parties have caused me to examine the authorities cited, and consider this motion with unusual care. I have a clear and positive opinion in regard to the case, but still I may be in error. It was insisted in the argument that it is obligatory upon the plaintiff who made the motion to remand this case, where the court had accepted jurisdiction to show clearly from the pleadings and records, as they were at the time the petition for removal was filed, that the case does not come within the provisions of the statute. It is a general rule of evidence

that upon issues of fact formed by the pleadings, the burden of proof is upon the party who affirms the truth of the controverted matter, and not upon the party that denies. This rule also generally applies to motions in a pending cause founded upon alleged facts. The moving party must affirmatively show the truth of his averments.

Upon jurisdictional questions the rules of pleading and procedure in common-law courts of general jurisdiction do not in many respects apply to federal courts of limited jurisdiction. In these courts jurisdiction is never presumed, and cannot be admitted, waived, or conferred by consent of parties. The court must look carefully into the pleadings and record to see whether its jurisdiction clearly appears. In cases removed from the state courts the record must be filed by the petitioners, and includes the proceedings by which the transfer was effected, and they must show, affirmatively, the facts necessary to give the court the jurisdiction thus obtained and accepted. *Railway* v. *Ramsey*, 22 Wall. 322. Where the circuit court has any doubt as to the right of removal, the safer practice is to remand the case to the state court, which clearly has jurisdiction; for if the court, in so doing, commits an error, it is speedily remediable in the supreme court of the United States. The dissatisfied party can take a writ of error and have the record filed in the supreme court, and on his motion the case will be advanced and speedily determined, and the question will not embarrass the further progress of the suit. *Wilson* v. *St. Louis & S. F. Ry. Co.* 22 FED. REP. 5. If this course is not adopted, the question remains open during the pendency of the case in the circuit court.

In the case of *Ayres* v. *Wiswall*, 112 U. S. 190; S. C. 5 Sup. Ct. Rep. 90, Chief Justice WAITE says:

"The fifth section of the act of March 3, 1875, makes it the duty of the circuit court of the United States to remand a cause which has been removed from a state court when it shall appear to the satisfaction of the court, at any time after the suit has been removed, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the court." *Ayers* v. *Chicago*, 101 U. S. 187; *Barney* v. *Latham, supra.*

If this case is allowed to remain in this court the pleadings in the action of law must be reformed so as to conform to pleadings in equity, and the objections made by the defendants might be obviated by amendments which are usually allowed for the purpose of administering substantial justice when a new and different case is not made by such amendments. Suppositions of this character should not influence the court to grant a. motion to remand a cause to the state court, in which there *clearly* appears, from the pleadings and record before it, that there is a *distinct and separable controversy* as contemplated by the statute, but such considerations may properly induce a court not to retain upon its docket a cause in which the *jurisdiction is doubtful.*

When a cause is properly removed from a state court under the

second clause of the second section of the statute, the removal carries into the United States circuit court *all the controversies* involved, and they may be fully determined *if the jurisdiction of the court continues to the hearing.* But if, at any time, during the pendency of the suit, the case should be so changed by amendments, or by reforming the pleadings, under the direction of the court, as to present only one *really indivisible controversy* between the parties, the jurisdiction of the court would cease. In this respect the fifth section of the act of March 3, 1875, modifies the general rule that where a court has rightfully obtained jurisdiction of the parties and subject-matter of an action or suit, it can decide every question involved and afford complete relief.

After a careful examination of the authorities cited, and a full consideration of the arguments of counsel, I am of the opinion that the pleadings and record of this suit, as they stood at the time of removal, show that it involves but one indivisible controversy between the plaintiff and defendants. It is therefore ordered that this suit be remanded to the state court from whence it was removed, upon the petition of the non-resident defendants.