ROBERT L. KNOWLES v. NORFOLK SOUTHERN RAILROAD
COMPANY.

*Pleading—Statement of Cause of Action—Motion to Dismiss—
Aider—Damages.*

1. Where it is apparent from the allegations in the complaint that the
plaintiff has no cause of action, a motion to dismiss at any stage
of the action will prevail; but where the complaint fails to set
forth a sufficient cause of action by reason of the omission of
some substantial averment, or for any other defect which might
be remedied by amendment, the objection must be made by
demurrer or answer, or the defendant will be deemed to have
waived it.

2. If the answer contains, by fair construction, an admission of the mate-
rial averments which should have been made in the complaint,
or if it is framed upon the assumption that such averments have
been sufficiently made, and denies them, the complaint will be
aided by the answer and the defects thereby cured.

3. The plaintiff may recover punitive damages where he proves that the
acts which caused the injury were accompanied by the fraud,
malice, reckless negligence, rudeness, oppression, or other wilful.
aggravation of the defendant.

This was a CIVIL ACTION, tried at the Fall Term, 1888, of
the Superior Court of PERQUIMANS County, before *MacRae,
J.,* for damages for an alleged unlawful expulsion of plain-
tiff from defendant's cars.

The complaint and answer and issues were as follows :

The plaintiff alleges :

" 1. That the defendants are a railroad corporation, doing
business in, and under a charter of the General Assembly
of this State.

" 2. That the plaintiff, on the ____ day of _____, 1887,
purchased of the defendant's agent at Winfall, a sta-
tion on their road, a return ticket to Elizabeth City, also a
station on said road.

"3. That on his return the day following, he was put off the train by the conductor, one Poindexter, because he had no ticket, which fact he, plaintiff, had not discovered until the same was called for.

"4. That the plaintiff explained the case to the said conductor, telling him that he knew where his ticket was; that he could and would get it as soon as he reached Winfall, and there deliver it to him, or that he would deposit with him, the said Poindexter, money of the value of the ticket, to be returned if he should produce the misplaced ticket at Winfall, as agreed; that the money was tendered the said conductor, but he refused to receive the same, and forced the plaintiff off the train several miles from his destination.

"5. That it is the custom of the defendants to accept money in lieu of tickets when the latter cannot be had.

"6. That by said wrongful act of ejecting the plaintiff from said train he has sustained serious damage."

Wherefore, he prays judgment, &c.

The defendant's answer was as follows:

"1. That section 1 thereof is true.

"2. That section 2 thereof is true.

"3. That on the day named, the plaintiff was a passenger on the defendant's train going from Elizabeth City south, and the conductor of said train called on him for his ticket, but was informed by the plaintiff that the same had been left by him in the pockets of another suit of clothes, and could not then produce it, but would do so the next day. The conductor then demanded of him the usual fare between Elizabeth City and Winfall, where he wanted to go, but this the plaintiff refused to pay, but did offer to deposit with the conductor enough money to pay the fare, provided the conductor would agree to return the same if the plaintiff would next day produce the ticket.) The conductor refused to do this, and informed the plaintiff that he was ordered in all cases to collect from passengers a ticket or the fare in money,

and that unless the plaintiff presented his ticket or paid the fare he would be put off the train; and upon the plaintiff's refusing to do either, the conductor, at the next station, stopped the train and told the plaintiff he must get off, which he did.

"4. That the conductor was carrying out in this matter the general orders of the defendant company; that he committed no violence whatever towards the plaintiff, but acted considerately and carefully towards him, and the plaintiff left, upon the demand of the conductor, and without being ejected by him.     *     *     *

"Wherefore, defendant demands judgment, that it go without day and recover its costs."

There was evidence on the part of the plaintiff tending to show that before the plaintiff was put off the train he offered to pay the conductor his fare, but that the same was refused; that the conductor was rude in his manner, and pushed the plaintiff as he got off the train.

Evidence denying this, and showing that the conductor had acted discreetly and kindly in ejecting the plaintiff, and that the plaintiff refused to pay his fare or exhibit a ticket, was introduced by defendant.

The following issues were submitted to the jury:

"1. Did the defendant's agent wrongfully eject plaintiff from defendant's train?

"2. What damage has plaintiff sustained?"

The Court charged the jury as follows:

"1. If the plaintiff was on the train from Elizabeth City to Winfall without his ticket, the conductor had the right to collect fare or put him off at the next station. Plaintiff could not require of the conductor to agree with him to return the money if he gave him the ticket in the morning. But if plaintiff offered to pay his fare without conditions, and the conductor refused to receive it, he had no right to put him off. If he did put him off under these circumstances, it was wrongful, and your response should be 'Yes.'

" 2. If, however, the plaintiff refused to pay his fare and
the conductor put him off in a rude or insulting manner,
such as to show malice on the part of the conductor, the
plaintiff would be entitled to such damage as you deem
proper—punitive. If he did offer to pay his fare and the
conductor put him off without using force or acting towards
him in a rude or insulting manner, the damages would be
the actual expenses which he incurred, and compensation
for the trouble to which he was put by reason of being
wrongfully ejected."

The defendant excepted to this charge, and assigned as
error that the Court instructed the jury that they might
assess punitive damages, when, under the pleadings as they
are, the plaintiff was not entitled, in any aspect of the case,
to punitive damages.

The jury answered the first issue " Yes," and the second
" $250," and the Court rendered the judgment set out in
the record, from which the defendants appealed.

The appellant moved in this Court for the first time to
dismiss the action because the complaint did not state facts
sufficient to constitute a cause of action.

*Mr. B. C. Beckwith*, for the plaintiff.
*Mr. W. D. Pruden*, for the defendant.

AVERY, J. (after stating the case). It seems that the Court
of Appeals of New York, giving effect to precisely the same
language as section 98 of the Code of Civil Procedure, and
substantially the same as section 242 of *The Code* of North
Carolina, have construed it to mean that the motion to dis-
miss on the ground relied on in this case would not be
entertained when made for the first time in the appellate
Court. Bliss' Code, sec. 499, p. 533, note z. We must stand
to our repeated decisions that this Court will, on motion, or
*ex mero motu*, dismiss an action on this ground, just as would

be done when it appeared upon the face of the record that the action had been brought in a court that did not have original jurisdiction. *Tucker* v. *Baker*, 86 N. C., 1; *Hunter* v. *Yarborough*, 92 N. C., 68; *Rogers* v. *Jenkins*, 98 N. C., 129; *Johnson* v. *Finch*, 93 N. C., 205; *Halstead* v. *Mullen, ibid.*, 252.

But, if the complaint *does state facts that constitute a cause of action,* by a fair construction of the language, the motion must be denied. If the language used in the fourth paragraph of the complaint is susceptible of the interpretation, that the plaintiff tendered to the conductor the usual fare from Elizabeth City to Winfall, and that the conductor put him off the train notwithstanding the amount usually paid for passage between those points was offered, there is a statement of facts sufficient to constitute a cause of action (*Nance* v. *Railroad Co.*, 94 N. C., 624); though, nothing more appearing, the recovery of the plaintiff might be restricted on trial to an almost nominal sum. The original jurisdiction must depend entirely on the amount demanded in good faith as damages. *Fell* v. *Porter*, 69 N. C., 140.

The paragraph mentioned is divided into two parts, separated by a semicolon, as it appears in the record, but might have been divided into two paragraphs. The first paragraph, if it had been so arranged, would have been as follows: "That the plaintiff explained the case to said conductor, telling him that he knew where his ticket was; that he would get it as soon as he reached Winfall, and there deliver it to him, or he would deposit with him, Poindexter, the value of the ticket, to be returned, if he should produce the misplaced ticket at Winfall, as agreed." The second portion of the section, as a distinct paragraph, would be as follows: "That the money was tendered to the said conductor, but he refused to receive the same, and forced the plaintiff off the train several miles from his destination."

These are two propositions, in no way dependent upon or qualifying each other, and not necessarily inconsistent, and

no matter what punctuation may be adopted, can be construed only as distinct offers.

First, the plaintiff proposes to deposit the value of the ticket; which, in the absence of any proof to the contrary, we must assume to be the usual fare between the two points named, but upon condition that he is to take it as a pledge and return it if tne ticket should be produced.

When the conductor refused to accede to that proposal, "*the money* (meaning the usual fare or value of the ticket) *was tendered to the said conductor and he refused to receive the same, and forced the plaintiff off the train.*" This is clearly susceptible of the interpretation, that the tender at last was unconditional, but the conductor impatiently declined it and ejected plaintiff. There can be no doubt that the language so construed is a statement of a good cause of action. In considering a motion of this kind we cannot look beyond the language of the complaint to the fact that the parties tried the case without objection, and apparently acted upon the idea that the pleadings put in issue the question, whether the regular fare had been tendered, because, as already stated, the motion might have been purposely reserved for this Court.

There was testimony on the part of the plaintiff tending to show that he offered to pay his fare before he was put off the train, and that the conductor, after refusing the money tendered, rudely pushed him as he was getting off. On the other hand, there was evidence on behalf of the defendant that the plaintiff refused either to pay the fare or exhibit a ticket, and that the conductor acted kindly and discreetly in ejecting him.

The defendant excepted to the charge, assigning as error that the Court instructed the jury that they might assess punitive damages, when, under the proceedings, as they are, the plaintiff was not entitled, in any aspect of the case, to punitive damages. Conceding that there must be sufficient

allegations in the complaint, as well as corresponding proof to sustain them, and that testimony, ·otherwise sufficient, would not support a verdict without *allegata* in accord with the *probata*, the question arises whether the complaint does not contain a statement of a cause of action in support of which the plaintiff may prove himself entitled to exemplary damages. Few, if any, of the ancient rules of pleading are now applicable ; all that is required of the plaintiff is a plain and concise statement of the facts constituting a cause of action. *Gorman* v. *Bellamy,* 82 N. C., 496; *Moore* v. *Edmiston,* 70 N. C., 510; *Jones* v. *Mial,* 82 N. C., 252. The words, "*forced the plaintiff off the train,*" and that he was " put off," together with the further allegation that by said wrongful act of " *ejecting plaintiff from said train,*" &c., *ex vi termini,* convey the idea that *actual violence* was used, because a demonstration of power would have compelled him " to get off" the train, and the word " ejecting " in this connection implies more than a mere command to leave the train, with power to enforce obedience. This view of the case is strengthened by the fact that the defendant in the answer is careful to aver that the conductor " stopped the train and told plaintiff he must get off, which he did, and that the former committed *no violence* whatever towards him, and that the plaintiff left upon the demand of the conductor and *without being ejected by him.*" The complaint charges *actual,* if not *more than ordinary, violence,* and the words " put him off " imply rudeness, however informal the expression may be. If the words do not import all that we have held that they mean, a sufficient cause of action being alleged, there would not be such a variance from the proof as would be deemed material, if any at all. *Willis* v. *Branch,* 94 N. C., 142; *Usry* v. *Suit,* 91 N. C., 406. But in fact the proof offered, of rudeness to the plaintiff on the part of the conductor, in the very act of expelling him, accords with the true interpretation of the

102—5

allegations mentioned, and such rude expulsion will entitle the plaintiff to recover more than ordinary damages. Wood's Railway Law, section 317, pages 1242–45, with notes.

Justice ASHE, delivering the opinion in *Holmes* v. *The Railway Company*, 94 N. C., 318, adopts the rule which must control the Court, and which is decisive of the point we have discussed: "When there is an element either of fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, *rudeness*, caprice, wilfulness, or other causes of aggravation, in the act or omission causing the injury, punitive damages may be awarded by the jury." Conceding that our interpretation of the language of the complaint is correct, there was an allegation, as there was evidence, of rudeness. It is apparent, too, from the careful denial of the answer, that the defendant was not misled, but understood what was meant by the plaintiff, and not only carefully avoided admitting the force as alleged, but set up an affirmative averment as to the force used, which draws the line very nicely between rudeness and a courteous discharge of a trying duty: *Usry* v. *Suit, supra; The Code*, §§ 269, 270 and 271; *Garrett* v. *Trotter*, 65 N. C., 430.

On the argument there was some discussion of the point, whether the objection that there was a variance between the allegation and the evidence offered by the plaintiff, if it had been well founded, could have been made for the first time after the defendant had introduced testimony to rebut the evidence offered by the plaintiff without objection on the part of the former. It would seem that the practice of the courts in New York differs from ours, also, in this respect. 18 N. Y , 515; 20 N. Y., 62.

The practice there permitted must be made consistent with the sections of *The Code* cited above, on the ground that a party, by failing to object to evidence introduced by his adversary, and offering rebutting testimony, waives his right

to take advantage of the defect in the pleadings at a later stage in the trial. While the holding of this Court as to variance differs widely from that of the appellate Court of New York, our Court has repeatedly drawn the distinction between a defective statement of a cause of action and a statement of defective cause of action.

In the case of *Garrett* v. *Trotter* (65 N. C., 430), Chief Justice PEARSON says for the Court: "The defect is aided by the answer, which *shows that the defendant understood* the complaint to charge an illegal withholding of the possession."

When, therefore, we have reached the conclusion that the complaint stated a cause of action upon which the plaintiff could recover actual damages, if there was some doubt or room for discussion as to the true meaning of the complaint considered alone, but the denial was so expressed in the answer as to prove that the allegations of the complaint were construed by the defendant to imply a charge of rudeness, and, therefore, denied, the doctrine of aider would apply, and the right to recover punitive damages for the rudeness, if proven, would be established.

The judgment must be affirmed.

Affirmed.