F. R. ROSE and Wife v. THE WILMINGTON AND WELDON
RAILROAD COMPANY.

*Carriers—Manner of Expulsion of Passenger.*

On the trial of an action for damages for putting the *feme* plaintiff off
a railway train, it appeared that the tickets held by herself and
husband were not stamped as required, and the conductor told
the husband that they must pay or get off, after the husband had
urged him to telegraph for leave for them to go on to W. on the
unstamped tickets; that when they reached the next station, the
conductor returned and said, in a "brusque, decided manner," to
the husband, "This is Halifax, if you are going to get off"; and
he, saying that he had no intention of getting off unless ordered,
the conductor said, "very decidedly, quickly and rudely," "Then
I order you to get off," at which plaintiff and her husband got off,
but returned and paid their fare: *Held*, that the company was not
liable for damages for the manner of expulsion, although the *feme*
plaintiff was riding on pillows and apparently unwell.

This was a CIVIL ACTION, tried before *MacRae, J.*, at Decem-
ber Term, 1889, of CUMBERLAND Superior Court.

The *feme* plaintiff and her husband had purchased tickets
from Fayetteville, N. C., to Old Point, Va., and return, with
a condition endorsed on the tickets that they were to be
stamped by the agent at Old Point.

The Court instructed the jury, in effect, that as the *feme*
plaintiff who brought the suit had failed to have her ticket
stamped, the conductor had a right to put her off, and the
only question for the jury to consider grew out of his man-
ner of expelling her.

There was a verdict and judgment in favor of the plain-
tiffs, from which the defendant appealed. The plaintiffs did
not appeal.

*Mr. Thos. H. Sutton*, for the plaintiffs.
*Messrs. Geo. M. Rose* and *Junius Davis*, for the defendant.

Avery, J.—after stating the facts: The Judge told the jury, in his charge, that their inquiry in passing upon the first issue (as to defendant's negligence) was narrowed down to the question whether the *feme* plaintiff was expelled from the train in a rude and insulting manner, considering her condition at the time, and all of the attendaht circumstances. The plaintiff did not appeal, and, therefore, the question whether the regulation in reference to stamping the ticket was reasonable does not arise, and we must consider this appeal as if it were admitted that the conductor had the right to put the plaintiff off the train. *Pickens* v. *Railroad*, 104 N. C., 312; *Boylan* v. *Railroad*, 132 U. S., 146; *McKinnon* v. *Morrison*, 104 N. C., 354.

This Court, Justice Ashe delivering the opinion, stated the rule to be that " when there is an element either of fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness, or other causes of aggravation in the act or omission causing the injury, punitive damages may be awarded by the jury." *Holmes* v. *Railroad*, 94 N. C., 318; *Knowles* v. *Railroad*, 102 N. C., 66.

In order to entitle one to recover punitive damages from a railroad company for expulsion from its train, there must be some violation of duty on the part of the servants of the company, accompanied by rudeness, oppression, insult, or one of the concomitants mentioned above. *Railroad* v. *Ballard*, 85 Ky., 307. In this case, the conductor finding soon after he took charge of the train, that the *feme* plaintiff (who brings this suit against the defendant company for damages) and her husband did not have tickets that would pass them, told the husband that they must pay or get off, after the husband had urged him to telegraph for leave for them to proceed to Wilson on their unstamped tickets.

The conductor, after giving the notice mentioned, left the husband, went on·through the train, and, returning when

they reached Halifax, said in a "brusque, decided manner" (addressing the husband), "This is Halifax, if you are going to get off." The husband replied: "I have no intention of getting off, unless you order me to get off." The conductor then said, according to the witness, "very decidedly, rudely and quickly," "Then I order you off." The husband and wife got off, but came immediately back and paid the fare to Wilson, where they passed on to another railway.

The better rule is that, where a passenger is wrongfully expelled from a railway train, he is entitled to recover the actual damages that he sustained therefrom, and if the expulsion is attended with undue force, or other aggravating circumstances calculated to humiliate the passenger or wound his pride, or if the passenger be lawfully ejected, but undue force used, accompanied by fraud or an exhibition of malice, rudeness, recklessness or other wilful wrong, such exemplary damages may be allowed as the jury think are warranted by the facts. *Hicks* v. *Hannibal Railroad Co.*, 68 Mo., 329; *Railroad* v. *Ballard, supra*; *Forsee* v. *Railroad*, 63 Miss., 66; *Railroad* v. *Rice*, 38 Kansas, 398; *Railroad* v. *Anns*, 91 U. S., 489; *Railroad* v. *Hoflich*, 62 Md., 300; 50 Am. Rep., 223; 3 Wood's R. L., § 364; *Clark* v *Railroad*, 91 N. C., 512.

In this case there is no question raised as to the right to expel the plaintiff from the train, and there is no suggestion that any force at all was used; but his Honor rested his ruling, it seems, upon the idea that the conductor subjected the company to liability by failing to display greater courtesy and politeness to a female passenger, and to take some special notice of the fact that she was riding on pillows, apparently unwell. It is true that the contract of common carriers to transport passengers embraces an implied stipulation to protect females against hearing obscenity, witnessing immodest conduct or submitting to wanton approach. *Com.* v. *Power*, 7 Metcalf; *Cooper* v. *Railroad*, 36 Wis., 657;

*Nieto* v *Clark*, Clifford, 145; *Chamberlin* v. *Chandler*, 3 Mason, 242.

But there was no agreement to carry the plaintiff to Wilson, and there was no evidence that her modesty or her nervous system was subjected to any shock except such as was necessarily incident to the discharge of the conductor's duty. A railway company cannot be held liable to answer in damages because its servant, who is required to collect fares and protect it against imposition by expelling those who have not paid in the time that elapses between stations that are often but a short distance apart, informs a husband in a brusque manner, in the presence of his wife, whose head is resting on a pillow, that they must pay or get off, and, after waiting until the train reaches the next station, says, in a decided or rude tone, that they must get off.

The language was certainly such as it was the right, if not the duty, of the conductor to use, and the defendant cannot be held responsible for his failure, in the hurry of the moment, to modulate his voice so as to make it soft or gentle, especially when he was giving a command in the line of his duty, which the plaintiffs had shown themselves loth to obey. Conductors ought to be, and we hope generally are, gentlemen, and can, therefore, discharge a disagreeable duty in a considerate manner where it affects female passengers.

There is error, for which a new trial must be had.

*Venire de novo.*