JOHNSON v. RAILROAD CO.

(Filed March 20, 1906).

*Railroads —Negligence —Fires —Damages    Recoverable —*
*Profits—Evidence.*

1.  In an action for damages for the negligent burning of plaintiffs'
    factory, evidence that plaintiffs had a contract to deliver a cer-
    tain number of crates at a fixed profit; that they had on hand
    the material to complete this contract at the date of the fire,
    and that it was impossible to replace this material, was compe-
    tent to be heard by the jury upon the issue of damages.

2.  When the cause of action is based upon a wrongful invasion of
    plaintiff's rights of person or property, he may recover all such
    damages, either direct or consequential, as flow naturally and
    proximately from the trespass, whether they could or could not
    have been anticipated.

3.  Where the profits lost by defendant's tortious conduct, proximately
    and naturally flow from his act and are reasonably definite and
    certain, they are recoverable; those which are speculative and
    contingent, are not.

ACTION by A. F. Johnson and R. F. Johnson, trading
under the firm name of A. F. Johnson & Son, against Atlan-
tic Coast Line Railroad Co., heard by *Judge W. R. Allen* and
a jury, at the October Term, 1905, of the Superior Court of
SAMPSON.

This was a civil action for the recovery of damages for the
alleged negligent burning by defendant corporation of a build-
ing used by plaintiffs, A. F. Johnson & Son, for the manufac-
ture of crates, baskets, etc.  Plaintiffs set forth in their com-
plaint that "they had accumulated upon said premises valu-
able forms, tools, fixtures, office supplies, furniture, etc., also
large quantities of crates, baskets, etc., already manufactured;
large quantities of crates, baskets, etc., in course of manufac-
ture, and large quantities of raw material for the manufac-

ture and completion of other crates and baskets. And plain-tiffs further allege that, at said time, they had contracted and agreed to furnish to various persons, firms and corporations, an output of 75,000 completed crates from their said factory, upon which they would have realized a reasonable profit of $3,500, but for the loss and destruction of the aforesaid prop-erty by fire," etc. Defendant not having sufficient knowledge or information to form a belief, denied this allegation. The plaintiffs upon the issue in regard to damages offered to show that they had a contract with the East Carolina Fruit Packing Co., to deliver 75,000 berry crates at a fixed profit of $3,500; that they had accumulated the material to complete this con-tract, and had the same on hand on November 29, 1904, when they were burned out; that it was impossible to replace this material in any of the markets of the country, and they lost the year's work; their laborers and servants were, for a long time, idle upon their hands, at heavy expense. This testimony was, upon defendant's objection, excluded. Plaintiffs ex-cepted and assigned as error, upon the issue in regard to dam-ages, the rejection of the proposed testimony, and appealed.

*Grady & Graham* for the plaintiffs.

*Junius Davis* and *Stevens, Beasley & Weeks* for the de-fendant.

CONNOR, J., after stating the facts. His Honor, we pre-sume, was of the opinion that the anticipated profits to be derived from completing the contract made by plaintiffs with the Fruit Packing Co., for the manufacture and delivery of the crates, were too speculative and conjectural to form the basis of a claim for damages. While this court has uniformly adhered to the rule in *Hadley v. Baxendale,* prescribing the measure of damages recoverable for breach of contracts, we find no decision controverting the proposition, held by other courts and laid down by many text writers, that in actions

founded upon a pure tort a different rule prevails.  Mr. Sutherland, after discussing many decided cases, says: "The correct doctrine, as we conceive, is that if the act or neglect complained of was wrongful, and the injury sustained resulted in the natural order of cause and effect, the person injured thereby is entitled to recover.  There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or non-action." 1 Damages, 16.  "A *tort feasor* is liable for all injuries resulting directly from his wrongful act, whether they could or could not have been seen by him.   *   *   *   The real question in these cases is, did the wrongful conduct produce the injury complained of, and not whether the party committing the act could have anticipated the result."   Hale on Damages, 36, 8 Am. & Eng. Enc. (2 Ed.), 625.

*Sledge v. Reid,* 73 N. C., 440, was an action of trover, for the wrongful taking of plaintiff's mule.  *Bynum, J.,* said: "Consequential damages to be recovered in an action of tort must be the proximate consequence of the act complained of, and not the secondary result thereof."  The court, in *Welch v. Piercy,* 29 N. C., 365, thus states the same doctrine: "Every man, in law, is presumed to intend any consequence, which naturally flows from an unlawful act, and is answerable to private individuals for any injury so sustained." Whatever distinctions may be recognized between actions founded upon tort, pure and simple, and those in which the cause of action is tort growing out of a breach of contractual duty—such as actions by passengers for wrongful ejection, shippers for failure to deliver freight, or parties in interest for failure to deliver telegrams, it is well settled that when the cause of action is based upon a wrongful invasion of plaintiff's rights of person or property, he may recover all such damages, either direct or consequential, as flow naturally

and proximately from the trespass. When the action is for breach of contract, the damages recoverable are such as naturally flow from the breach and such special or consequential damages as are reasonably presumed to have been within the contemplation of the parties at the time they made the contract as the probable result of a breach of it. In ascertaining what damages come within the rule it is proper to examine, not only the terms of the contract, the subject matter, etc., but also to inquire whether such circumstances or conditions as produced special damages were communicated to the defendant. We apprehend that the same rule prevails when an action in the nature of tort is brought for the breach of a duty arising out of contract. *Williams v. Telegraph Co.,* 136 N. C., 82; *Dayvis v. Telegraph Co.,* 139 N. C., 79. In *Lee v. Railroad,* it is said: "It is immaterial whether we treat the cause of action as for a breach of contract, or for a negligent omission to perform a public duty arising out of contract." We were then considering the measure of damages for failure to deliver freight. When a party commits a trespass, he must be held to contemplate all the damages which may legitimately follow from his illegal act. In *Brown v. Chicago, etc., Railroad Co.,* 54 Wis., 354, it is said: "The general rule is that the party who commits a trespass or other wrongful act is liable for all the direct injury resulting from such act, although such resulting injury could not have been contemplated as the result of the act done."

*Judge Christiancy,* in *Allison v. Chandler,* 11 Mich., at page 561, says: "It is urged by counsel for the defendant that damages for the loss of profits ought not to be allowed, because they could not have been within the contemplation of the defendant. Whether, as a matter of fact, this is likely to have been true, we do not deem it important to inquire. It is wholly immaterial whether the defendant in committing the trespass actually contemplated this, or any other species of damage, to the plaintiff. It is a consideration which is con-

fined entirely to cases of contracts, when the question is, what was the extent of the obligation in this respect, which both parties understood to be created by the contract. But when a party commits a trespass, he must be held to contemplate all the damages which may legitimately flow from his illegal act." *Stevens v. Dudley,* 56 Vt., 158.

We are thus brought to a consideration of the question whether the proposed testimony was competent to be considered by the jury in assessing plaintiffs' damages. "It was at one time laid down as a general rule that damages could not be recovered for the loss of profits. It was thought that profits were in their nature too uncertain to be considered." Hale on Dam., 72. "The rule is subject, however, to the modification that if the profits lost by defendant's tortious conduct, proximately and naturally flow from his act and are sufficiently definite and certain, they may be recovered or at least evidence in respect to them may be heard and considered by the jury in fixing such damages as will compensate plaintiff. Profits which would certainly have been realized, but for the defendant's fault, are recoverable; those which are speculative and contingent are not." *Ibid.* *Judge Christiancy,* in *Allison v. Chandler, supra,* says: "But whatever may be the rule in actions upon contract, we think a more liberal rule, in regard to profits lost, should prevail in actions purely of tort (excepting, perhaps, the action of trover). Not that they should be allowed in all cases without distinction; for there are some cases where they might in their nature be too entirely remote, speculative or contingent to form any reliable basis for a probable opinion. * * * But generally in an action purely of tort, when the amount of profits lost by the injury can be shown with reasonable certainty, we think they are not only admissible in evidence, but that they constitute, thus far, a safe measure of damages." Sutherland, vol. 1, sec. 70, says: "If a regular and established business is wrongfully interrupted, the damage thereto can be shown by

proving the usual profits for a reasonable time anterior to the wrong complained of. In *Schile v. Brokahaus,* 80 N. Y., 614; *French v. Lumber Co.,* 145 Mass., 261.

In *Jackson v. Stanfield,* 137 Ind., 592, it is held that evidence is admissible showing anticipated profits, not remote or speculative, not as the measure of damages, but to aid the jury in estimating the extent of the injury sustained." *Fibre Co. v. Electric Co.,* 95 Me., 318; *Gwaltney v. Timber Co.,* 115 N. C., 579; *Jones v. Call,* 96 N. C.; 337.

*Willis v. Branch,* 94 N. C., 142, was an action for a trespass upon a public hall leased by plaintiff, and removing an oil tank used for lighting. Plaintiff claimed as special damage loss of profits on contracts made with theatrical companies. This court said: "If plaintiff had existing engagements for theatrical entertainments, that were disappointed by the injury, damages sustained on that account might be embraced—but not for such as he might probably have had." Mr. Sutherland quotes with approval the language used by the court in *Allison v. Chandler, supra:* "When from the nature of the case, the amount of damages cannot be estimated, with certainty, or only a part of them can be so estimated, there is no objection to placing before the jury all the facts and circumstances of the case having any tendency to show damages, or their probable amount so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructons and advice from the court as the circumstances of the case may require, or as may tend to prevent the allowance of such damages as may be merely possible, or too remote and fanciful in their character to be safely considered as the result of an injury." 4 Sutherland, sec. 1029.

In the light of the principles announced in the foregoing authorities, we are of the opinion that the testimony in regard to the contract with the Fruit Packing Co. was competent to be heard by the jury upon the question of damages sustained

by plaintiffs, A. F. Johnson & Son.  It is by no means certain that the jury should fix the damages in that respect at the profits which plaintiff would have made on the manufacture and delivery of the crates, but they may take into consideration the terms of the contract, the position of plaintiffs in regard to its completion, the solvency of the Packing Company and all other competent and relevant testimony casting light upon the value of the contract to plaintiffs at the time. of the fire.  While in all human affairs there is of necessity an element of uncertainty, the law, which seeks to deal as far as practicable with conditions in a practical way, and as near as may be give compensation for injuries sustained, only demands, as the basis of the claim, reasonable certainty.  If plaintiffs had been considering a proposition to sell their factory with its outstanding contracts, it would have been entirely practicable to measure with reasonable certainty its enhanced value by reason of the existence of the contract with the Packing Company.  In doing so the cost of the material on hand, the cost of manufacturing and delivering, the contingencies usually attendant upon and incident to the business, the solvency of the Packing Company, etc., would have been considered.  The jury having found that plaintiffs' factory was destroyed by the negligence of defendant, they are entitled to recover all such damages as naturally and proximately flow from the trespass—the value of the contract in the light of the facts proposed to be shown by the question asked the witness should be considered as coming within the rule.  This, of course, excludes any evidence in regard to profits not covered by contracts.  They would be speculative. There might be no demand for crates, prices might decline, a short crop of berries might decrease the demand or a large crop enhance it.  These, and many other, contingencies not remote, would enter into the problem, which would render any conclusion unreliable and unsatisfactory.  For the rejection of the proposed testimony there must be a new trial.

In several of the cases cited in this opinion, the term "injury" is used. The term as used must be understood as synonymous with "damages." The authors are discussing the character of damages for which a party guilty of negligence, resulting in injury, is liable, and not the question of proximate cause. It is only in this view that the word "injury" is to be understood. The jury have, under instructions to which there are no exceptions, found that defendant is guilty of actionable negligence. The exception is pointed only to the exclusion of evidence in regard to damages. The costs should be divided equally between the parties.

New Trial.