J. W. CARMICHAEL v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

(Filed 22 May, 1913.)

**1. Telephone Companies—Cutting Out Phones—Malice—Evidence.**
    In this action for damages against a telephone company for maliciously taking plaintiff's phone from his residence for nonpayment for its service, when the service had in fact been paid for, the testimony of the plaintiff's daughter that the defendant's collector, in plaintiff's absence, presented the bill at his residence in a rude manner, is held competent as a part of the transaction complained of.

CARMICHAEL *v.* TELEPHONE CO.

2. **Evidence—Objections and Exceptions—Competent in Part—Appeal and Error.**

   When a part of the testimony of a witness excepted to is competent, the admission of the whole thereof, though incompetent in part, will not be held for reversible error.

3. **Telephone Companies—Cutting Out Phones — Malice — Punitive Damages—Financial Condition—Evidence.**

   Where a plaintiff is entitled to recover punitive damages in his cause of action, evidence of the defendant's financial condition is competent; as in case where a telephone company maliciously takes a telephone out of the house of a subscriber under such circumstances as to cause him damages.

4. **Telephone Companies—Cutting Out Phones—Malice—Tort—Punitive Damages—Unforeseeable Results.**

   Where it is established that a subscriber to a telephone exchange has paid the sum demanded for this service, and the company maliciously cuts out his phone for its alleged nonpayment, the defendant is guilty of a tort, and is liable for all damages flowing naturally and proximately from the wrongful act, although not foreseen.

5. **Instructions—Construed as a Whole—Erroneous in Part—Burden of Proof.**

   Where in a charge in an action for damages alleged to have been wrongfully inflicted, it appears that the burden of proof is put on plaintiff to establish his cause by the greater weight of the evidence, when considered as a whole, a detached portion thereof which fails to require this will not be held for reversible error.

6. **Telephone Companies—Duty to Patrons—Instructions.**

   In this action against a telephone company for damages caused the plaintiff for wrongful cutting out a telephone from his residence, a charge is held correct that defendant's business is affected with a public use, that it is a public-service corporation, and among its duties is to give its patrons courteous and prompt service, and that the defendant must be sure it is within its rights before depriving a patron of its service.

BROWN, J., dissenting.

APPEAL by defendant from *Lyon, J.,* at January Special Term, 1913, of NEW HANOVER.

This action is to recover damages for the wrongful and malicious cutting out of the plaintiff's telephone.

The facts are stated in the report of the former appeal in the same action, 157 N. C., 21.

Miss May Carmichael, a witness for plaintiff, testified as follows: "I am a daughter of Mr. J. W. Carmichael, and live on St. James Square in the city of Wilmington, and have been living there for some years. My grandfather was Mr. W. H. Northrop, my mother's father, and he was in the hospital in 1908. My other grandfather was Dr. James Carmichael, the preacher. We had a telephone in our house in 1908, and had it there ever since we lived there. It had never been disconnected before. This was what happened: The bell rang, and I went to the door, and this young man was standing at the door. He asked, 'Is your father in?' and I said, 'He is not,' and he thrust this bill in the door and said, 'Give this to him when he comes in, and tell him if he don't come down and pay this bill, I will cut his phone out.' His manner was abrupt. I told my father. I told him this gentleman had come to the door and he was very rude to me; came in an abrupt way and gave this message, which I repeated to him; had thrust the bill in the door and said if he did not come down and pay the bill, he would cut his phone out." Defendant objected; objection overruled, and defendant excepted.

The plaintiff was examined in his own behalf, and testified, among other things, as follows:

"Q. As a matter of fact, is the Southern Bell Telephone Company a rich corporation or not? A. They sent me a stockholders' book; why they sent it to me I don't know; but it showed assets of $869,000,000, which I should say was a very rich corporation." (Objection by defendant; objection overruled, and defendant excepted.)

Cross-examination: "That was the statement of the American Bell and the Southern Bell Telephone Companies together. The consolidation was $869,000,000. That was the statement of the American Telephone and Telegraph Company, which owns the Southern Bell, and it included the Southern Bell. That's a statement of the consolidated, but they showed separately for the minor company."

This evidence was admitted on the issue of punitive damages.

CARMICHAEL *v.* TELEPHONE CO.

The manager of the defendant at Wilmington testified, among other things: "Am in the employ of the defendant company. I would say the defendant is a reasonable sized company. I don't know what is the capital stock. I don't recollect that I ever heard. I have seen a statement, and I recollect it was in the millions, but can't recollect exactly what it was. It is a subsidiary company to the American Telephone and Telegraph Company."

The court charged the jury, among other things, as follows:

1. "And if you find from the evidence, and by the greater weight thereof, the burden being on plaintiff to so satisfy you, that the defendant had knowledge or could have known by the exercise of ordinary care, that the plaintiff's father-in-law was in the hospital, and the phone was being used to ascertain his condition and communicate it to the plaintiff's wife, you may consider the mental suffering that the plaintiff sustained by reason of the disconnection of the phone." Defendant excepted.

2. "If you should find that the defendant cut out the phone through malice to the plaintiff, or if it was cut out recklessly, wantonly, without any regard to the rights of the plaintiff, it would still be within your discretion whether or not to punish the defendant. You can give damages on the third issue if you are satisfied it was done recklessly, wantonly, maliciously, or you cannot, if you find it was so done." Defendant excepted.

"Defendant's business is one which is affected with public use, and the company is a public-service corporation, with certain well defined rights and duties, among the latter of which is to give to each and all of its patrons, and to those who desire to become patrons, courteous and prompt service in the transmission of messages; and it is the duty of the defendant to be sure that it is strictly within its rights before it undertakes to deprive one of the public of the right of its service." Defendant excepted.

There was a verdict for the plaintiff, and the defendant appealed from the judgment rendered thereon.

*Rountree & Carr and H. M. McClammy for plaintiff.*

*John D. Bellamy & Son, J. Brutus Clay, and H. E. Palmer for defendant.*

CARMICHAEL v. TELEPHONE CO.

ALLEN, J. This action has been tried in accordance with the opinion delivered on the former appeal, and we find no reversible error.

The testimony of the daughter of the plaintiff as to the conduct of the agent of the defendant was competent as a part of the transaction complained of, but, if not, the exception could not avail the defendant, as the objection was to the whole of her testimony, a part of which the defendant does not contend was incompetent. *Ricks v. Woodard,* 159 N. C., 647.

The testimony of the plaintiff as to the financial condition of the defendant was admissible on the issue of punitive damages (*Tucker v. Winders,* 130 N. C., 147), but in any event its admission would not be reversible error, because the facts objected to were brought out without objection on the cross-examination of the same witness, and in the examination of the manager of the defendant.

The first exception to the charge is that there was no evidence that the defendant knew, or could have known by the exercise of ordinary care, that the plaintiff's father-in-law was in the hospital, and that the phone was being used to ascertain his condition.

We doubt if there was any evidence of the fact, but are of opinion it was not necessary to prove knowledge on the part of the defendant; and that his Honor placed a burden on the plaintiff which he did not have to assume.

The verdict of the jury, read in the light of the charge, establishes the facts that the plaintiff had paid his phone charges and had the receipt of the defendant therefor, and that the defendant maliciously cut out the phone. If so, the defendant was guilty of a tort, and is liable for all damages flowing naturally and proximately from the wrongful act, although not foreseen.

In *Johnson v. R. R.,* 140 N. C., 576, the Court quotes with approval from Sutherland and Hale on Damages as follows: "Mr. Sutherland, after discussing many decided cases, says: 'The correct doctrine, as we conceive, is that if the act or neglect complained of was wrongful, and the injury sustained re-

162—22

sulted in the natural order of cause and effect, the person injured thereby is entitled to recover. There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or nonaction.' 1 Damages, 16. 'A tort feasor is liable for all injuries resulting directly from his wrongful act, whether they could or could not have been seen by him. . . . The real question in these cases is, Did the wrongful conduct produce the injury complained of? and not whether the party committing the act could have anticipated the result.' Hale Damages, 36; 8 Am. and Eng. Enc. (2 Ed.), 265."

The criticism of the second excerpt from the charge is that his Honor used the expression, "If you shall find," without adding, "by the greater weight of the evidence"; but if this should be held to be erroneous, standing alone, an examination of the whole charge shows that immediately before the part complained of, his Honor told the jury, "You cannot allow any damages under the third issue unless you find from the evidence and by its greater weight, the burden being on the plaintiff to so satisfy you, that the phone was cut out through malice or was cut out wantonly or recklessly."

The learned counsel for the defendant does not contend, in his carefully prepared brief, that there was no evidence to support a finding for the plaintiff on the issue of punitive damages, and it is, therefore, unnecessary to discuss the evidence bearing upon the issue, which in our opinion was sufficient to justify submitting it to the jury.

The last exception is to a part of the charge defining the duty of the defendant to its patrons, as follows: "Defendant's business is one which is affected with a public use, and the company is a public-service corporation, with certain well defined rights and duties, among the latter of which is to give to each and all of its partons, and to those who desire to become patrons, courteous and prompt service in the transmission of messages; and it is the duty of the defendant to be sure that it is strictly within its rights before it undertakes to deprive one of the public of the rights of its service."

This rule imposes no greater burden on the defendant than is imposed on all who are under legal or contractual obligations to others, as all must be sure they are strictly within their rights before they refuse to perform a duty arising from contract or imposed by law, or they will be liable in damages for failure to do so. The language of David Crockett, "Be sure you are right, and then go ahead," has become axiomatic.

We find

No error.

BROWN, J., dissenting: The judge submitted these issues:

1. Did the defendant unlawfully cut out plaintiff's telephone, as alleged in the complaint? Answer: Yes.

2. If so, what actual damage is the plaintiff entitled to recover therefor? Answer: $100.

3. If so, what punitive damage is the plaintiff entitled to recover therefor? Answer: $500.

The court charged: "If you should find that the defendant cut out the phone through malice to the plaintiff, or if it was cut out recklessly, wantonly, without any regard to the rights of the plaintiff, it would still be without your discretion whether or not to punish the defendant. You can give damages on the third issue if you are satisfied· it was done recklessly, wantonly, maliciously, or you cannot, if you find it was so done."

I am of the opinion there is no just ground upon the evidence in this case to warrant the imposition of punitive damages. The plaintiff's own evidence shows there was a *bona fide* difference between him and defendant's manager as to whether he had paid his phone rental. Plaintiff admits that his phone charges became due 1 April, and that up to 3 June he had not paid them, although asked for them repeatedly. He claims to have paid them to Murray, defendant's clerk, on 3 June. The defendant had indulged him for a full month. One 29 June, being dunned again for his dues, he stated to ·defendant's manager, Boyd, that he had paid them in full. Boyd said: "Our books show only $1.50 was paid, and if you will bring your receipt around, we will be glad to fix our books."

Plaintiff admits that he could not find his receipt.

Plaintiff further testifies that on 27 June he and his wife had gone to a hospital to see her father, and on return home they found the phone cut out. Plaintiff, on 29 June, paid the balance of $3 under protest, and the phone was at once restored. He was without the use of a phone about 36 hours. A week afterwards his wife found the receipt. Plaintiff further testifies that Murray came to see him and asked to see the receipt, and he declined to let him have it. He further says that at once Boyd, defendant's manager, came to see him, and offered to settle the matter, and pulled out a roll of bills, but plaintiff declined to negotiate.

There is no evidence here of either malice, wantonness, or a reckless disregard of plaintiff's just rights. There is evidence of a *bona fide* difference as to the payment of plaintiff's rental. He failed to produce his receipt until some time after the phone had been taken out, and at once the defendant's manager offered to compensate plaintiff for any damage he may have sustained, but plaintiff refused even to discuss the matter.

I believe in holding public-service corporations to a full performance of their duty, but they are compelled to use human beings to perform their functions for them, and humanity is not infallible.

In this case an honest mistake was made, and $100 actual damage is a very large compensation for the injury suffered. I find nothing in the record which in my opinion warrants the imposition of "smart money" upon defendant.