JOHN COX WEBB v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 25 November, 1914.)

1. Telegraphs—Nominal Damages—Issues—Special Instructions—Appeal and Error — Harmless Error — Punitive Damages—Trials—Evidence—Questions of Law.

Where a telegraph company is sued for its negligent delay in the delivery of a message, and issues of negligence, amount of compensatory and punitive damages are separately submitted, exceptions to the second issue, upon which the jury has found only nominal damages in accordance with the defendant's special request for instructions, became immaterial, so far as the defendant is concerned, it appearing that the company has negligently delayed its delivery; and while punitive damages are recov-

erable when the amount of compensatory damages are only nominal, the evidence, to sustain such recovery, must not only tend to show an unexplained delay of the message which, being a failure of the defendant to perform a public duty, will sound in tort, but some acts on the part of the defendant or circumstances of aggravation which will amount to willful, wanton, or malicious conduct, in regard to the message sued on. The grounds upon which punitive damages may be awarded, and whether it is necessary that the corporation, as principal, must in some way have recognized or participated in the wrongful conduct of its local agent, and whether the recovery is not necessarily dependent upon the company's profits or loss at the particular locality, discussed by WALKER, J.

2. **Telegraphs—Tort—Nominal Damages—Notice of Importance—Parol Evidence—Compensatory Damages.**

The breach of duty of a telegraph company to promptly transmit or deliver a message it has accepted for that purpose, though it does not give notice of its importance on its face, makes it liable for nominal damages, at least, and verbal communications made to the local agent receiving it, with respect to its importance, are admissible upon the issue of compensatory damages.

3. **Telegraphs — Issues — Appeal and Error — Punitive Damages—Courts—Trials—Instructions.**

An action to recover damages for mental anguish, physical suffering, etc., of a telegraph company, for its negligent failure to transmit or deliver a telegram relating to sickness or death, ordinarily may be submitted to the jury under two issues, though the question of punitive damages arises therein; and where a third issue, as to punitive damages, has been erroneously submitted, or there is no evidence as to it, the court should withdraw it or instruct the jury to answer it in the negative.

APPEAL by defendant from *Lyon, J.,* at June Term, 1914, of ORANGE.

This is an action against the defendant to recover damages for delay in delivering a telegram, alleged to have been caused by its negligence. Plaintiff on 8 July, 1911, filed with defendant's operator at Morehead City, N. C., a message addressed to William Faucette, a hackman at Hillsboro, N. C., and of which the following is a copy: "Leaving Morehead this evening; meet me tonight sure." He informed the operator at Morehead City that "he must be sure to get it off at once, as he, the plaintiff, would arrive in Hillsboro very early in the morning and wished to be met by a hack driver, who ordinarily did not meet that train, and he accepted the message and promised to do the best he could." Plaintiff also stated to the operator that "he lived from 1 to 1¼ miles from the station at Hillsboro, and had heavy baggage, and that he had hurt his hands severely on a fishing trip." He left Morehead City on 8 July, 1911, at 5 o'clock p. m., taking passage on a Pullman car, and arrived at the station in Hillsboro about 4 o'clock a. m., 9 July, 1911, his uncle, J. W. Webb, being with him. "It was about daylight," he testified. He was worried at not meeting the hackman, and they decided to carry his

baggage about 300 yards to the Bellevue Mills and leave it with the watchman there,. which 'they did; and then he walked home. "He was tired and worn out from the trip." He testified, on cross-examination, that there was a dwelling-house about 150 yards from the station, but the occupants were asleep, and that there were other dwellings near by; that the weather was pleasant, and that he had many times before walked from his home to the station and from the station to his home.

William Faucette, the hackman, testified that he was at the station from 5 :15 p. m., 8 July, 1911, until the train passed at about 5 :38 p. m., and no telegram was delivered to him. Plaintiff telephoned the next morning at 9 o'clock and inquired if he had received his message, and was told that he had not. He went to the station about 8 o'clock a. m. on the 9th, inquired for the telegram, and was told that there was none for him, and that about 10 o'clock the same day, when he was at the station to meet a train, the message was handed to him. He lived 1½ miles from the station, had a telephone; but did not know whether the agent, who had been there about a month, knew him or not. That he would have met the plaintiff at 4 :30 a. m. on the 9th, had he received the message in time to do so.

The defendant requested the court to charge the jury:

1. That plaintiff could not recover more than nominal damages, including the cost of sending the telegram.

2. That nominal damages, in this case, meant 25 cents, or some similar amount.

3. As there was nothing in the message to indicate the importance of prompt delivery, and as the attention of the company was in no way called to such matters, the plaintiff cannot recover any damage for mental suffering, and they will not consider it in making up their verdict.

The court refused to give the instructions, and defendant excepted.

The court charged the jury as follows on the third issue: "You cannot give punitive damages unless you find that defendant willfully or maliciously or recklessly refused to transmit and deliver the message in question in a reasonable time; but if you so find, you may, in your discretion, give such damages as you may see fit by way of punishment to the defendant." Defendant excepted.

There was no other exception to the charge, except the one taken to the refusal to instruct as requested by defendant.

The jury returned the following verdict:

1. Was the defendant guilty of negligence in failing to deliver the telegram, as alleged in the complaint? Answer: "Yes."

2. What compensatory damages is plaintiff entitled to recover? Answer: "25 cents."

3. What punitive damages, if any, is plaintiff entitled to recover? Answer: "$100."

The defendant appealed from the judgment thereon.

*Frank Nash for plaintiff.*

*George H. Fearons, King & Kimball, and Alf. S. Barnard for defendant.*

WALKER, J., after stating the case: The jury having decided the second issue according to the defendant's prayer for instruction in regard to it, its exception as to the issue became immaterial; and those which relate to the first issue are unimportant, as it was not denied that there was delay in delivering the message, and this constituted a *prima facie* case of negligence (*Sherrill v. Tel. Co.,* 116 N. C., 655; *Ellison v. Tel. Co.,* 163 N. C., 5); and, besides, the negligence is apparent from the uncontroverted facts; so that we dismiss those exceptions with this brief comment, and proceed to consider the only remaining question, whether the plaintiff was entitled to recover punitive damages.

We have already stated that defendant was guilty of negligence, and, in a legal sense, it was inexcusable. The law will recompense the party whose right has been violated, by allowing actual damages; but exemplary or vindictive damages are not included therein, but are those in excess of the actual loss and rather designed as a punishment for the willful, wanton, or malicious conduct of one person towards another, and as a warning to other wrongdoers. Being in the nature of a penalty, they should not be awarded unless there are circumstances of aggravation, or such a reckless disregard of the rights of the plaintiff as to imply wantonness, bad motive, or malice. "Such damages," says *Justice Hoke* for the Court, "are not allowed as a matter of course, but only where there are some features of aggravation, as when the wrong is done willfully and maliciously, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights. It is not necessary to submit this element of damage under a separate issue, but there is no objection to this course, and frequently it is desirable. As stated in the principal opinion, there are no circumstances of aggravation shown in this evidence which would justify an award of exemplary damages, but on the issue as to actual or compensatory damages the jury under proper instructions should be directed to award what, in their judgment, is a fair compensation for the plaintiff's wrong under the principle here stated, and not confined to the actual loss in time or money, as was done on the former trial." *Ammons v. R. R.,* 140 N. C., at p. 200. In that case a conductor had ejected a passenger from a train because he had no ticket and had refused to pay 10 cents more than the price of a ticket, which was 40 cents, and which he could

not procure on application to the ticket agent before boarding the train, as the supply of tickets had been exhausted, as he was told by the agent, who promised to see the conductor about it and secure him passage at the ticket rate, which he failed to do. The Court unanimously held that he could not recover punitive damages, *Justice Brown* saying, in the leading opinion, at p. 198: "To entitle a passenger to such damages, his wrongful expulsion from the train must be attended by such circumstances as to show rudeness, insult, aggravating circumstances calculated to humiliate the passenger. The subject of punitive and compensatory damages has been discussed in many cases in our own reports. In the opinion in this case at the last term the Court called attention to some of the more important. The plaintiff's testimony fails to bring this case within the authority of any of these precedents so as to justify the awarding of punitive damages. On the next trial of the case it will be the duty of the trial judge to explain to the jury the meaning of, and difference between, punitive and compensatory damages, and to instruct them, upon the plaintiff's own testimony, as herein set out, that he is entitled to compensatory damages only," citing *Holmes v. R. R.,* 94 N. C., 318; *Rose v. R. R.,* 106 N. C., 170; *Knowles v. R. R.,* 102 N. C., 66. *Justice Hoke* filed a separate opinion in which the three other justices concurred, and in which will be found the language above quoted. It was also there held that where a passenger is wrongfully ejected from a railroad train, the demand may be considered as one in tort, and, on an issue as to actual or compensatory damages, he may recover what the jury may decide to be a fair and just compensation for the injury, including his actual loss in time or money, the physical inconvenience and mental suffering or humiliation endured, and which could be considered as a reasonable and probable result of the wrong done. "Wounding a man's feelings is as much actual damage as breaking his limb. The difference is that one is internal and the other external; one mental, the other physical. At common law compensatory damages include, upon principle and, I think, upon authority, salve for wounded feelings, and our Code had no purpose to deny such damages where the common law allowed them," citing *McNeill v. R. R.,* 135 N. C., 683; Hale on Damages, sec. 261, and *Head v. R. R.,* 79 Ga., 350, opinion by *Bleckley, J.* We stated in *Jackson v. Tel. Co.,* 139 N. C., 346, that the doctrine had been thoroughly well settled that the jury, in addition to actual or compensatory damages, may award those which are exemplary, punitive, or vindictive, and sometimes called "smart money," to vindicate the right, punish the wrong, and to set an example before others who may be prone to the commission of like offenses, if the defendant has acted wantonly or with criminal or reckless indifference to civil obligations, or has been guilty of an intentional and willful violation of plaintiff's rights,

citing *R. R. v. Prentice,* 147 U. S., 489; *Hansley v. R. R.,* 117 N. C., 565.

In *Fohrmann v. Traction Co.,* 63 N. J. L., 391, the Court goes very fully into the doctrine of punitive damages as applicable to individuals or corporations who conduct their business by agents, the wrongful deed having been actually committed by the latter, and refers with some fullness to the case of *L. S. and M. S. Railway Co. v. Prentice,* 147 U. S., 489, already cited by us. It quotes and approves the following passages taken from the opinion in that case, which it says is a fair abstract thereof: "The railroad company cannot be charged with punitive or exemplary damages for the illegal, wanton, and oppressive conduct of a conductor of one of its trains towards a passenger; punitive or vindictive damages, or smart money, are not to be allowed as against the principal unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct, authorizing or approving it either before or after it was committed; and a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent is brought home to the corporation." The New Jersey Court then refers to its own decision in *Haines v. Schultz,* 21 Vroom, 481, cited and relied on in the *Prentice case,* and adds the following as its own statement of the principle discussed, as made in the case of *Haines v. Schultz, supra,* as quoted in *R. R. v. Prentice:* "The right to award, then, rests primarily upon a single ground—wrongful motive. It is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite. Absence of all proof bearing on the essential question, towit, the *defendant's* motive, cannot be permitted to take the place of evidence without leading to a most dangerous extension of the doctrine *respondeat superior.*" But we need not decide that question, although it may be in this case, as we think, that upon another and sufficient ground the plaintiff is not entitled to recover vindictive damages. A kindred question to the one decided in the *Prentice* and *Haines cases* was discussed by us in *Daniel v. R. R.,* 136 N. C., 517.

The court allowed the jury, upon the question of damages, to consider every element of compensatory damages involved in the second issue, including mental anguish, although the plaintiff states in his brief that there is nowhere in the case any claim for damages on account of mental anguish, and notwithstanding the broad latitude permitted to them, the jury assessed the actual damages at 25 cents, which was practically nothing, as it was merely returning to the plaintiff what he had paid out and giving him nothing besides as compensation for the wrong. He was entitled to damages for pecuniary loss, mental or physical pain (if any), inconvenience, annoyance, or discomfort, which is physical, and must

not be purely imaginary, but produced through the medium of the senses and not flowing from mere delicacy of taste or refined fancy or abnormal sensibility, and surely not the result of a morbid supersensitiveness. *Saunders v. Gilbert*, 156 N. C., 463, citing 1 Sedgwick on Damages (8 Ed.), secs. 37 to 42; 4 Sutherland on Damages, secs. 1010a and 1241, and *Williams v. R. R.*, 144 N. C., 498, to which we add *Ammons v. R. R., supra,* and *Smith v. Tel. Co., ante,* 248. The verdict as to actual damages unmistakably shows that the jury thought the wrong one of a trivial character, or else they would have awarded substantial damages in response to the second issue, instead of giving, as we have said, practically nothing or only a nominal amount. There are no circumstances of aggravation in the case, and nothing that indicates more than an ordinary tort or breach of contract, whichever way we may view the true nature of the action. There was apparent neglect, to be sure, and the defendant offers no excuse for it, nor palliation of it, but the law holds it only to that measure of responsibility and damages as will compensate the plaintiff for the wrong done, and for nothing beyond, as there is no sufficient evidence in the case to show wantonness or malice, nor even a reckless and contemptuous disregard of plaintiff's rights. There are no circumstances of aggravation to be found in the wrong committed. The operator at Morehead City promised to do the best he could, and may have done so; and if he did not, we can, from this record, discover no such unusual breach of his and the company's duty as to warrant the assessment of punitive damages. If we should permit them to be awarded, almost every case of negligence in failing to deliver with due promptness must call for the application of the same principle, and there would be no end or limit to the responsibility of telegraph companies or even carriers. The result would be the one stated by us in *Williams v. Tel. Co.*, 136 N. C., 82, that a rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business of life. The effect would be to impose a liability wholly disproportionate to the nature of the act or service which a party has bound himself to perform, and to the compensation paid and received therefor. If, therefore, the law should allow the imposition of vindictive damages in a case of this kind, it would shock our sense of justice and fair play, and go beyond what the protection of the public or a proper regard for the rights of the individual required. Eminent authors have said that the doctrine is an exceptional or anomalous one, at variance with the general rule of compensation, and hence is logically wrong. Sedgwick on Damages, sec. 353; Hale on Damages. But while we do not accept this theory, we deem it proper,

in the administration of justice, to restrict it within reasonable limits, so that in its enforcement it may not be productive of oppression and do much greater harm than would a denial of such damages. It is far better to adopt the middle and safer course, by which we would apply the principle as laid down by Thompson on Carriers of Passengers, sec. 27, p. 573: "Such damages are termed exemplary, punitive, or vindictive—sometimes called 'smart money'—and are only awarded in cases where there is an element of either fraud, malice, such a degree of negligence as indicates a reckless indifference to consquences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act of omission causing the injury. Some of the authorities include 'gross negligence' as one of the elements which entitles the plaintiff to exemplary damages. But the better view is given in an opinion delivered in a recent case in the Supreme Court of the United States. In reviewing that case, *Mr. Justice Davis,* who delivered the opinion, said: 'Some of the highest English courts have come to the conclusion that there is no intelligible distinction between ordinary and gross negligence.' *Milwaukee R. R. Co. v. Ames,* 91 U. S., 489. 'The general rule, therefore, is that where the violation of duty makes the defendant a wrongdoer, only compensatory damages are allowed, while proof of a wrongful purpose may take a case out of it, as an exceptional one.'" This is consonant with our own decisions, and is the wiser and more conservative rule. *Rose v. R. R.,* 106 N. C., 168; *Tomlinson v. R. R.,* 107 N. C., 327; *Ammon v. R. R.,* 140 N. C., 196; *Hayes v. R. R.,* 141 N. C., 199; *Carmichael v. Telephone Co.,* 157 N. C., 21 (*s. c.,* 162 N. C., 333), and especially in *Williams v. R. R.,* 144 N. C., 498, where plaintiff had to walk 1½ miles in consequence of a breach of duty by defendant.

In *W. U. Tel. Co. v. Reeves,* 126 Pas., 216 (*s. c.,* 34 Okla., 468), the Court said: "Treating, for the time, that the cause of action stated was for a breach of a contract to promptly transmit and deliver the message, we are confronted with the very general rule that punitive damages are not recoverable for the mere breach of contract, irrespective of the motive on the part of the defendant which prompted the breach," citing many cases. And further: "Treating the action, however, as one sounding in tort, was plaintiff entitled to recover? As a general rule it may be said that exemplary, punitive, or vindictive damages will not be awarded, unless there is proof going to show a wrongful purpose or reckless indifference to consequences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act or omission causing the injury, or because the injury was inflicted maliciously, wantonly, or under circumstances of contumely or indignity, or because the circumstances showed a reckless indifference to duty." It will be seen, after a full reading of that case, that, as do the courts in other cases to the same

effect, the learned justice attaches great importance to and lays much stress upon the intrinsic nature of the wrong and any circumstances of mitigation or aggravation in the extent of the injury flowing from it. We must not be understood as denying the right to recover where there is only trifling or even nominal damages (*Saunders v. Gilbert,* 156 N. C., 463), for sometimes there may be substantially no actual damages, though the wrong is committed wantonly and maliciously and exasperatingly, as was the fact in that case. The plaintiff was pursued by a mob and he and his wife fired at, but little or no damages resulted. There were circumstances of great aggravation there, and of a serious nature. But here they are entirely absent.

The case of *W. U. Telegraph Co. v. Westmoreland,* 44 So. Rep. (Ala.), 382, is more exactly in point, for there a sister wired from Montgomery, Ala., to her brother at Athens, Ala., in the evening of 28 November, 1903, requesting him to meet her that night at the railroad station in the latter town, which he failed to do, as he did not receive the message in time, the message not being delivered until the next evening. *Chief Justice Tyson,* in the course of a very able and learned opinion, says: "It does not appear by any testimony that the plaintiff was not duly escorted home, or that she sustained any actual damages whatever of any kind by the misfortune of the message not arriving before the train on which she had taken passage. It was not shown that the delay in the delivery of the message arose from any willful or malicious act whatever, nor was there any proof whatever that any mental distress, anxiety, or pain was caused to the plaintiff by the nondelivery of the message." He further states that two questions were presented, and one of them is this, whether punitive damages are assessable for the mere failure to deliver punctually a social message of the character here shown and under the circumstances of this case. He then answers his own question, at p. 383: "Where the wrong in its essence is the mere failure to perform a contract, involving no insult or outrage to the feelings cognizable by the law, and no actual damage to the person or property of the plaintiff, it cannot be held that the public peace or quiet is offended, and therefore there is no basis for the infliction of vindictive damages. And we think, if this was a case in which vindictive damages were assessable at the discretion of the jury, the proofs would not be sufficient to support a verdict involving their allowance. When an actual trespass is committed, or an act, like slander or libel, necessarily involving in its essence an active and intentional wrong, malice may be inferred from the act itself; but when the relations of the parties are contractual, and call for the performance of stipulations undertaken, the presumption of innocence which the law uniformly indulges would characterize the omission of performance in this case as unintentional—that is, simple negligence. We think this is

not a case for punitive damages." We may not agree with all that has thus been so well said, but the case is an authority, based upon facts so closely analogous to those appearing in this record, that it is fully sufficient, in other respects, to sustain our view. See Hale on Damages, sec. 124.

While we decide that there was error in regard to the third issue, we do not mean to imply that there are not cases where telegraph companies may be mulcted in pecuniary damages by way of punishment and example for its wrongs in handling messages. Some cases have been before this Court in which such a course might well have been pursued, and where conscious and reckless indifference to the rights of patrons was apparent, the negligence being of a very grave and serious character. It will be well for the defendant to have a care for its own interests in the future and avoid such inexcusable lapses from its plain duty to the public. If its returns, at any particular office, are not profitable enough to justify the employment of a sufficient force to conduct its business properly, it must remember that this shortage in funds at one place may be more than compensated by much larger receipts at others. The law looks at the average profits, for in all extensive businesses some part thereof is likely to be unremunerative. This was expressly held in *Corporation Commission v. R. R.*, 137 N. C., 1, where the matter is fully considered and the authorities collated, the Court especially referring to *R. R. v. Gill*, 156 U. S., 664; *R. R. v. Minnesota*, 186 U. S., 261; *U. S. v. Freight Assn.*, 166 U. S., 322; *Cantwell v. R. R.*, 176 Ill., 512; *R. R. v. R. R. Commission*, 109 La., 247; *Gladson v. Minnesota*, 166 U. S., 430, and *Wisconsin v. Jacobson*, 176 U. S., 296. The principle is tersely . stated in *Cantwell v. R. R.*, *supra:* "The sufficiency of the earnings of a railroad to justify the expense of running a separate passenger train over a certain branch line constituting part of the entire system is not to be determined by considering the profits of that branch alone, but of the whole business of the various parts of the roads operated with the branch as one continuous line." Defendant has not pleaded, in exculpation of its negligence, any lack of sufficient funds from business at either the initial or terminal office to perform its duty to the public adequately, and if it had done so, we see that it would have been in vain, as scant earnings are no excuse for imperfect service, and especially so where there has been negligence.

The presiding judge should not have submitted the third issue, or, having submitted it, he should have told the jury to answer it in the negative, and not have given the instruction to which exception was taken by the defendant.

In any view of the evidence the plaintiff was entitled to recover something—at least nominal damages. What plaintiff told the operator at

Morehead as to his reasons for wanting the hack to meet him the next morning was competent. It showed the importance of the message to plaintiff, and put defendant on its guard. The defendant's assignment of error No. 4, subdivision 3, shows the relevancy of this evidence, for there it is claimed that the message, on its face, did not disclose its importance or the necessity for prompt delivery. We have already said that plaintiff was entitled to damages for mental and physical suffering, inconvenience, and so forth. It therefore follows that defendant's assignments of error, relating to these questions, should be, and they are, overruled. The other exceptions have become unimportant.

We therefore direct that the third issue be disregarded and stricken out, and that judgment be entered for the plaintiff upon the remaining issue, that is, for 25 cents and the costs of this Court and the Superior Court.

