H. B. EDWARDS v. SOUTHERN STATES FINANCE COMPANY ET AL.

(Filed 9 January, 1929.)

**1. Corporations—Stock—Actions for Fraud in Procuring Subscriptions to Stock—Conspiracy.**

The fraudulent misrepresentations of an agent of a corporation in the sale of stock therein are not competent evidence against the officers and directors, sued individually, when the representations were not made in their presence nor afterwards ratified by them, in the absence of an issue of conspiracy to thus defraud the plaintiff. *Insurance Co. v. Knight*, 160 N. C., 592, cited and distinguished.

**2. Same—Issue of Conspiracy.**

In an action against the officers and directors of a corporation to recover damages for having been induced to subscribe to shares of stock in the corporation by fraudulent representations of others acting as sales agents of the corporation, which were not made in the presence of the defendants nor afterwards ratified by them, and there is evidence of a conspiracy to thus defraud, it is reversible error for the trial judge to refuse to submit the issue as to the conspiracy to the jury for their determination.

**3. Damages — Punitive Damages — Evidence of Financial Worth of Defendant.**

Where punitive damages are not recoverable upon the pleadings, evidence as to the financial worth of the defendant is incompetent.

CIVIL ACTION, before *Harwood, Special Judge,* at February Term, 1928, of UNION.

The plaintiff instituted an action against the Southern States Finance Company, J. E. Ashcraft, J. R. Cherry, R. C. Newsome, A. P. Rhyne,

J. C. Walker, J. B. Elliott and W. W. Morris, who were officers and directors of said corporation.

Plaintiff alleged that the defendant, J. E. Ashcraft, was president and director of the Southern States Finance Corporation; that the defendant, Cherry, was secretary thereof, and the other defendants directors thereof.

Plaintiff further alleged that the defendant, Ashcraft, entered into a conspiracy with certain stock salesmen of the corporation to defraud the plaintiff, and in pursuance thereof, represented to him that said corporation was stronger than any bank; that "it was backed by a $15,000,000 company"; that the common stock had earned as much as 16%, and that if he purchased stock in said company and needed his money, it would be refunded to him upon a notice of sixty days.

Plaintiff testified that he relied upon these representations, and as a result thereof, bought $4,200 worth of stock. Dividends were paid for a certain period and were then discontinued. Plaintiff made demand for the return of his money, which was declined. Thereafter, the company became bankrupt and the plaintiff's investment was lost. Thereupon, he instituted the present suit against the officers and directors named, to recover from them damages, to the amount of money which he had invested in stock of the company.

The plaintiff also offered evidence tending to show that the defendant, Ashcraft, and other defendants had personally made false representations with respect to the condition of said company.

In apt time the plaintiff tendered issues arising upon the pleadings, including an issue of conspiracy in the following language:

"Did the defendant, Ashcraft, and the salesmen, Quimby, Hinman, Meyer and Helvenston, enter into a conspiracy to defraud plaintiff as alleged in the complaint?"

The trial judge declined to submit an issue of conspiracy, but submitted the following issues:

"1. Was the plaintiff, H. B. Edwards, induced to subscribe for and purchase stock in the Southern States Finance Company by means of misrepresentations and fraud practiced by the defendants or any of them, as alleged in the complaint?

2. If so, did the Southern States Finance Company participate therein, as alleged in the complaint?

3. If so, did the defendant, J. E. Ashcraft, participate therein as alleged in the complaint?

4. If so, did the defendant, J. R. Cherry, participate therein as alleged in the complaint?

5. If so, did the defendant, A. P. Rhyne, participate therein as alleged in the complaint?

6. If so, did the defendant, R. C. Newsome, participate therein as alleged in the complaint?

7. What amount, if any, is plaintiff entitled to recover?"

All of the issues so submitted were answered in the affirmative, the seventh issue having been answered as follows: "$4,200, less dividend. No interest. $132 dividend."

Judgment was entered upon the verdict.

The defendants appeal, assigning errors.

*Vann & Milliken and H. B. Adams for plaintiff.*
*W. B. Love for R. C. Newsome.*
*J. C. Sikes for J. E. Ashcraft.*
*Armfield, Sherrin & Barnhardt for Ashcraft, Cherry and Rhyne.*

BROGDEN, J. (1) In a suit for damages against the directors of a bankrupt corporation, upon the ground of fraudulent and false representations in the sale of stock, is evidence of false representations made by stock salesmen of the corporation, not in the presence of the directors sued, competent against such directors?

(2) In such an action, in the absence of allegation or proof warranting punitive damages, is it competent to offer in evidence the financial worth of one of the defendants?

The plaintiff seeks to recover from the defendants upon two theories, to wit:

First, that the defendants and stock salesmen of the corporation entered into a conspiracy to defraud the plaintiff and others, and that therefore the act or declaration of one conspirator is effective against all.

Second, that the defendants personally made false representations with respect to the financial condition of said corporation, and furthermore, concealed and suppressed with fraudulent intent the true condition of said company.

"In the case of the charge of a combination to defraud," remarks a recent writer, "the declarations of each of the parties to such combination, relating thereto, are evidence against the others, though made in the absence of the latter, provided the parties were at the time of the declarations in the furtherance of the common design. . . . Slight evidence of collusion or concert is sufficient to let in the declarations of one of the parties as evidence against all, but there must be some evidence of the combination." *Hauser v. Tate*, 85 N. C., 82.

The record discloses that evidence was offered by the plaintiff to the effect that the salesmen, Hinman and Helvenston, represented to him that the common stock was selling at $2.50 a share, and was earning a dividend as high as 16% net. Ashcraft was not present at this conversation. Later on a salesman named Quimby came to solicit plaintiff, and

the plaintiff was permitted to testify that this salesman told him that "Dr. Ashcraft had sent him and they were making money hand over hand—couldn't take care of the business, and that if there was any possible chance for me to raise any money, he would be glad; he needed it, and all I could send him, . . . and that Dr. Ashcraft said that the common stock was then selling for $10 a share, and I subscribed for $500 worth—gave notes for $200 and $300."

The court told the jury: "The answer of the witness, gentlemen, will not be received by you at present as tending to prove that Quimby was sent by Dr. Ashcraft unless the plaintiff introduces testimony showing that Dr. Ashcraft had something to do with it, and will not consider Quimby's statement that he was sent by Dr. Ashcraft."

There was other evidence of like tenor. Such evidence was competent against the defendant, Ashcraft, and other directors, provided a conspiracy was shown. Ordinarily, a director of a corporation is liable for false and fraudulent representations made by him or his agent, within the scope of his employment, or for such as were approved or ratified. The rule governing such liability is thus expressed in *Anthony v. Jeffress,* 172 N. C., 378, 90 S. E., 414: "It is immaterial whether the defendants (directors) were cognizant of the insolvent condition of the company or not. The law charges them with actual knowledge of its financial condition, and holds them responsible for damages sustained by stockholders and creditors by reason of their negligence, fraud, or deceit."

It must be borne in mind that the stock salesmen, who made the fraudulent representations complained of, were not the agents or employees of Ashcraft and his codefendant directors, but were the agents and employees of the corporation which was a third party. These fraudulent representations made in the absence of Ashcraft and the other directors, by stock-selling agents of the corporation could, therefore, be competent against the individual defendants only upon the theory of a conspiracy. The issue of conspiracy was essential to the competency of such evidence. The trial judge failed and omitted to submit the issue of conspiracy tendered by the defendants, and the exception of the defendants to such ruling is sustained.

The plaintiff relies upon the cases of *Ins. Co. v. Knight,* 160 N. C., 592, 76 S. E., 623, and *Bank v. Sherron,* 186 N. C., 297, 119 S. E., 497. In the *Knight case,* the agents of the plaintiff made fraudulent representations to the defendant. The action was between the principal and the defendant. Certainly, when the principal sued the defendant upon a transaction procured by his own agents, the representations made by the agents in procuring the contract would be competent. The same reasoning applies to the *Sherron case,* because the plaintiff in that case claimed

30—196

to be an innocent purchaser and holder of a note made by the defendant, the defendant asserting that plaintiff's title to said instrument was derived from a third party, and that the agents of such third party had made false representations in procuring the instrument, and the evidence was offered for the purpose of affecting plaintiff with notice under the negotiable instrument statute.

The witness, Fannin, testified that the defendant, Ashcraft, had made certain representations to him in an effort to procure the wife of witness to buy stock, and that the defendant, Ashcraft, among other things, had stated that he would return the money upon notice of thirty or sixty days after such return was desired. Thereupon, witness was asked the following question: "In that conversation with him, did Dr. Ashcraft make a statement? If so, what did he say about his own financial worth and responsibility?" The witness replied: "He said he was worth a hundred to a hundred and fifty thousand dollars; if he got my money and my wife's money he would see we didn't lose." There was no allegation in the complaint seeking punitive damages, and no such issue was submitted to the jury.

The defendant objected to the testimony elicited, and the exception to such evidence is sustained.

Evidence of the financial condition of a defendant is inadmissible except in cases warranting the award of punitive damages. *Tucker v. Winders*, 130 N. C., 147, 41 S. E., 8; *Arthur v. Henry*, 157 N. C., 393, 73 S. E., 206; *Carmichael v. Tel. Co.*, 162 N. C., 333, 78 S. E., 507.

The record covers four hundred and two pages, and there are two hundred and ninety-two exceptions. There are other exceptions not discussed worthy of grave consideration; but, as a new trial must be awarded, we deem it inadvisable to enter into a discussion of them for the reason that they may not arise again, and the further reason that it is practically impossible, in a lengthy discussion of alleged errors, to guard against possible intimations that might be confusing to the trial judge upon another hearing.

New trial.